# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS, EASTERN DIVISION

NATHAN E. DOSS, an individual,

        PLAINTIFF,

  VS.

KENCO LOGISTIC SERVICES, LLC, a
Tennessee Limited Liability Company, and
Mars, Inc.,

        Defendants.

FILED

DEC – 7 2015

CLERK OF THE COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA, ILLINOIS

15-2287

1

**NOW COMES PLAINTIFF, NATHAN E. DOSS** (hereafter "DOSS") and hereby brings his complaint against defendants **KENCO LOGISTICS SERVICES, LLC**, a Tennessee, Limited Liability Company (hereafter "KENCO"), and alleges as follows:

## I.
## NATURE OF THE ACTION

1.      The action is brought to remedy the violations of DOSS's civil rights and to redress the unlawful and discriminatory employment practices of KENCO. This action arises out of the conduct of KENCO's employees and its employment practices of (1) Unequal terms and condition of employment for unequal pay; (2) A. Harassment based in whole or in part  upon his race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-16 et seq., and the Civil Rights Act of 1866, as amended by the Civil Rights Act of 1991 and 42 U.S.C. §1981, (3)  B. Harassment based upon perceived sexual orientation (homosexual) and (4)  C. Harassment based upon retaliation for making an internal  and external complaints of discrimination.

## II.
## JURISDICTION

2.      This in part, an action authorized and instituted pursuant to  the Civil Rights of 1964, 42 U.S.C. §2000e, et seq.; the Civil Rights Act of 1866, as amended by the Civil Rights Act of 1991, 42 U.S.C. §1981; 42 U.S.C. 1981A, 42 U.S.C. §1988 Illinois common law.

3.      The jurisdiction of this court is predicated upon 28 U.S.C. §§1331 and 1343, to redress the unlawful deprivation of Plaintiff's rights secured, guaranteed and protected by federal law.  The Court also has jurisdiction pursuant to 28 U.S.C.

§§2201 and 2202 relating to declaratory judgments. This Court may also exercise pendent jurisdiction over Plaintiff's state law claims arising from a common nucleus of operative facts pursuant to 28 U.S.C. 1367.

### III.
### VENUE

4.    Venue is proper in the United States District Court for the Central District of Illinois, Eastern Division pursuant to 28 U.S.C. 1391 (b) wherein Doss worked and where KENCO regularly conducts business and where are wrongful conduct complained of herein occurred.

### IV.
### THE PARTIES

#### PLAINTIFF

5.    DOSS is a citizen of the United States and is an African American male and at all relevant times herein; he has resided in Illinois, in the County of Will and was an employee of KENCO within the meaning of the Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, et seq., and applicable case law.

6.    DOSS was employed with KENCO and its predecessors, whom at all times acted as agents of Mars, Inc., since on or about August 2012 through various 3rd party management companies; beginning with 4T's Management Company and then with KENCO since April 2013.

**DEFENDANT**

7.        At all relevant times herein, Defendant KENCO was a 3rd party Logistics management servicing agent for Mars, Incorporated employing over $3000^{+}$ employees nationwide and is a Tennessee Limited Liability Company.  KENCO maintained an office in Manteno, Illinois and currently maintains offices in Bolingbrook, Illinois, and conducts business within the State of Illinois and Cook County and within the judicial district.  Defendant KENCO'S primary place of business is in Chattanooga, Tennessee and is an employer within the meaning of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§2000e, et seq..

**V.**
**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

DOSS has complied with the administrative prerequisites of §506 of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-5 as follows:

8.        On or about, MAY 7, 2014, Doss timely filed a formal charge of discrimination with the Illinois Department of Human Rights (hereafter the "IDHR") which was cross-filed with the Equal Employment Opportunity Commission (hereafter "EEOC") as Charge Numbers 2014CF2858 and 21B-2014-01536, respectively.

9.        On or about, May 21, 2014, Doss timely filed a formal charge of discrimination with the Illinois Department of Human Rights (hereafter the "IDHR") which was cross-filed with the Equal Employment Opportunity Commission as Charge Numbers 2014CF2992 and 21B-2014-01634, respectively.

10.     On or about, June 9, 2014, Doss timely filed a formal charge of discrimination with the Illinois Department of Human Rights (hereafter the "IDHR") which was cross-filed with the Equal Employment Opportunity Commission as Charge Numbers 2014CF3161 and 21B-2014-01747, respectively.

11.     On or about, May 29, 2014, Doss timely filed a formal charge of discrimination with the Illinois Department of Human Rights (hereafter the "IDHR") which was cross-filed with the Equal Employment Opportunity Commission as Charge Numbers2014CF3057 and 21B-2014-01685, respectively.

12.     On or about, August, 2014, Doss timely filed a formal charge of discrimination with the Illinois Department of Human Rights (hereafter the "IDHR") which was cross-filed with the Equal Employment Opportunity Commission as Charge Numbers 2105CF0310 and 21B-2014-02258, respectively.

13.     On or about, October 3, 2014, DOSS timely filed a formal charge of discrimination with the Illinois Department of Human Rights (hereafter the "IDHR") which was cross-filed with the Equal Employment Opportunity Commission as Charge Numbers 2015CF0822 and 21B-2015-00009, respectively.

14.     DOSS promptly and diligently accommodated all IDHR and EEOC requests for information and fully cooperated in the agency's investigation of this matter.

15.     DOSS has exhausted all available administrative remedies in accord with the aforementioned statutes prior to instituting this Civil Action, and DOSS formally requested a Notice of Right to Sue from EEOC on August 17, 2015 and September 4, 2015, respectively. No administrative prerequisites are required before a plaintiff files

a complaint pursuant to the Civil Rights Act of 1866, as amended by the Civil Rights

Act of 1991, 42 U.S.C. §1981.

# VI.
## FACTUAL ALLEGATIONS

16.    DOSS was employed with predecessors of KENCO on or about April 14, 2012 as a Warehouse Associate, for 3rd party management company whom at all times acted as agents of Mars, Inc., beginning with 4T's Management Company and then with KENCO on April 21, 2013 and was promoted to Warehouse Lead in December of 2013 at the Mars' warehouse in Manteno, Illinois.

17.    At all relevant times, Defendant KENCO employed in excess of fifteen (15) employees for at least twenty (20) calendar weeks in 2013, 2014 and 2015.

18.    At all relevant times, all matters regarding compensation, terms, conditions, rights and privileges of DOSS's employment were governed and controlled by Defendant KENCO.

19.    At all relevant times DOSS possessed the skills, experience and qualifications necessary to work in his employment position and adequately and completely performed all of the functions, duties and responsibilities of his employment with Defendant KENCO.

20.    KENCO, upon information and belief was acting as the agent of Mars and in its conduct and actions as alleged herein and was acting in a capacity within the scope of its authority, or, if said conduct was outside the scope of its authority, said conduct was known; authorized and ratified by Mars.

21.    At all times, Kelvin Walsh, ("Walsh"), a White, American male, held the position of General Manager.  Walsh was in a position of authority to undertake

6

tangible employment decisions and/or control the terms and conditions of DOSS's employment with Defendant KENCO.

22.    At all relevant times, Walsh, acting on behalf of Kenco the managing agent for Mars, Inc. directed and approved all operational activities, including but not limited to: hiring, pay, scheduling, performance management, workflow and the like.

23.    At all times relevant, Mike Manzello, ("Manzello"), a White male, held the position of Operations Manager, reporting to Walsh.  Manzello was in a position of authority to undertake or recommend tangible employment decisions and/or control the terms and conditions of DOSS's employment with KENCO

24.    At all relevant times, Manzello managed operational activities relative to the receipt and distribution of inventory for Mars, Inc., including but not limited to: hiring, scheduling, workflow and the like.

25.    At all times relevant, Valerie Lillie, ("Lillie"), a White female, held the position of Quality Coordinator, reporting to Walsh.  Lillie was in a position of authority to undertake or recommend tangible employment decisions and/or control the terms and conditions of DOSS's employment with KENCO.

26.    At all relevant times, Lillie coordinated/managed all quality activities relative to the operation and maintenance of the facility, the receipt and distribution of inventory for Mars, Inc., quality matrixes and plans, pest control, standard operating procedures, sanitation and safety, as well as Mars, Inc. requirements and other industry specific regulatory mandates and guidelines such as but not limited to: FDA and OSHA.

27.    In early December 2013, Lillie began making jokes and innuendos about her perception of DOSS's sexual orientation in a group of persons.

28.    DOSS expressed his opposition to Lillie's remarks by stating that "he does not swing that way and that wasn't cool."

29.    KENCO's Human Resources Administrator, Edith McCurry was present on one such occasion when the comment was made by Lillie whom also heard and observed DOSS's opposition to the offensive remarks.

30.    DOSS was promoted from a Warehouse Associate to a Shift Lead on or about December 9, 2013.

31. Immediately upon DOSS's promotion, he was harassed and subjected to unequal terms and conditions of employment than other Shift Leads, when Walsh failed to pay him the prevailing wage of a Shift Lead upon promotion.

32.    DOSS questioned Walsh about the pay disparity and Walsh informed him that do to budgetary reasons, defendant KENCO was not able to give him the prevailing wage, but would administer prorated increases in pay over a period of time.

33.    On or about December 16, 2013, unbeknownst to DOSS, KENCO through Tammi Fowler, its then Corporate HR Director approved and endorsed such actions of Walsh to prorate plaintiff's wages.

34.    In late February 2014, DOSS was initially asked by Manzello to go for external training for the implementation of a new warehouse management system called "Red Prairie."

35.    In the beginning of March 2014, DOSS complained to Walsh, Manzello, and the Manteno site Human Resource personnel that he was being subjected to unequal terms and conditions of employment by not being paid the prevailing rate of a Shift Lead, as similarly situated, non-black and female Shift Leads.

8

36.     Shortly after having complained to Walsh, Manzello and the Manteno site Human Resources personnel of having been subjected to such unequal terms and condition of employment, DOSS was told by Manzello that he was not going for the external training on the new warehouse management system.  No reason was articulated for not giving plaintiff the training on the new system.

37.     DOSS was effectively denied training for the mandated system upgrade in March of 2014.

38.     DOSS complained to Walsh, Manzello and the Manteno Human Resource personnel about the lack of training, along with the other disparities that he had been subjected to.

39.     KENCO sent all the non-black leads for external training on the Red Prairie warehouse management system in March of 2014.

40.     Immediately after DOSS complained of not being trained for the Red Prairie warehouse management system, he began being subjected to continued harassment by Walsh, Manzello and Valerie Lillie.

41.     At all relevant times, Kelvin Walsh, Mike Manzello and Valerie Lillie were acting as agents, servants and/or employees of Defendant KENCO. Defendant KENCO is liable for the acts and omissions of these individuals pursuant to the principals of ratification, respondeat superior and actual and/or implied agency.

42.     Throughout DOSS's employment tenure, under KENCO, he was routinely and unjustifiably harassed and humiliated by Kelvin Walsh, Mike Manzello and Valerie Lillie.  This harassment included conduct related to DOSS's job performance;  a reduction in his rate of pay; an accusation that he smelled like marijuana, the outward expression that he was perceived  as being a homosexual and being compared to a "gay" character, "Ray Holt" on a television series,

"Brooklyn Nine Nine", as well as, being punished by the altering and reduction of his hours worked; limiting DOSS's access to overtime ("OT") and requiring him to use his paid time off ("PTO") to comprise a 40 hour work week.   Upon information and belief, similarly situated, white, non-black and non African-American co-workers of DOSS were not subjected to such treatment.

43.      DOSS objected to and began reporting such disparate treatment on or about December, 2013 reporting such conduct to the Defendant's Manteno onsite Human Resources personnel.

44.      DOSS's shift was routinely cancelled by Walsh beginning in April of 2014 for the stated reason that "DOSS was not capable of running an effective shift." However, similarly situated, non-black, non-African-American workers with less experience, including newly hired employees were afforded the opportunity to run their shifts.  Upon information and belief, their shifts were never cancelled.

45.      Walsh made disparaging remarks concerning DOSS's work performance publicly--these statements directed toward Plaintiff were misleading and inaccurate.

46.      DOSS was denied training in late April of 2014 when he was excluded from the internal training for the Red Prairie warehouse management system, as well as, being assigned tasks that would further exclude and segregate him from the training.

47.      On or about May 2, 2014, Lillie continued to make additional unwanted comments again concerning DOSS's sexual orientation.  This prompted other co-workers to engage in a conversation about plaintiff in which they equated DOSS to "Ray Holt," a gay character played by Andre Braugher of the television series, "Brooklyn Nine Nine."

48.      DOSS again protested such actions directed toward him and reported it to the Defendant's onsite Human Resources personnel.

49.      After DOSS began questioning, complaining and reporting the matters to onsite HR, his shifts began to become routinely cancelled, for the stated reason that "[plaintiff] was not able to adequately run his shift."     In addition, DOSS continued to be the victim of unequal terms and condition of employment in that he was subjected to a disparity in his rate of pay relative to similarly situated white, non-black, non-African American co-workers.

50.      DOSS was further subjected to other forms of disparate treatment and harassment in that on or about May 5, 2014, he was forced to take a "drug and alcohol" test by Mike Manzello and Valerie Lillie in retaliation for engaging in protected activity and opposing such treatment by Walsh, Mike Manzello and Valerie Lillie.

51.    DOSS was intimidated, coerced and threatened with termination into taking a drug test on his day off pursuant to Defendant KENCO's "reasonable suspension" policy.

52.      DOSS was forced to swipe in on the clock and was given a work order for a drug and alcohol testing that stated that he had a work time accident necessitating the testing.

53.    DOSS was required by Defendant KENCO to go to, Provena, a drug and alcohol testing facility in Bourbonnais, Illinois under escort.  Upon information and belief, similarly situated non-black, non-African American co-workers of plaintiff were not treated in such a manner.

54.      DOSS was accused of being hostile, angry and aggressive because he opposed being forced to take the drug test under the circumstances of being coerced and intimated into doing so under the threat and duress of being discharged on his off day.

55.     Defendant KENCO's policies and procedures do not have a provision for the actions that were imposed upon DOSS.

56.     Upon information and belief, Defendant KENCO allowed similarly-situated, non black, non-African American co-workers of DOSS to take drug tests subsequent days later after being mandated to do so.

57.     Defendant KENCO alleged and proffered to Illinois Department of Human Rights that DOSS manipulated the drug and alcohol test results.

58.     Walsh, Manzello, and Lillie, the GM, the Operation Manager, and the Quality Coordinator used this incident to further isolate and treat DOSS differently based upon his race and his perceived sexual orientation (homosexual).

59.     DOSS and other African Americans were subjected to harsher discipline and closer scrutiny than his similarly situated, white, non-black, non-African American   co-workers.

60.     DOSS and other African Americans have been subjected to public humiliation, harassment, retaliation, and retribution when questioning or complaining about the unfair discriminatory treatment and practices of Defendant KENCO while his white, non-black, non African-American counterparts were not subjected to such treatment.

61.     Walsh, Defendant KENCO's then General Manager at the Manteno facility, and in turn KENCO, became more openly hostile, retaliatory and discriminatory towards DOSS as well as other black and African American employees encouraging supervisors, leads and other non-black, non-African workers under their management to do likewise.  This included but was not limited to all phases of employment, i.e.: hiring, discharge, performance management, conditions of employment, promotion, paid time off, furlough/leave of absences, discipline, work shifts, benefits, and wages.

62.      DOSS's cancelled shifts, use of PTO and the reduction his work hours caused him a loss of income.

63.      Defendant KENCO sought every opportunity to treat DOSS unfairly in relation to his similarly situated, white, non-black, non-African American co-workers and to diminish his authority and expertise.

64. On or about May 5, 2014, DOSS took action against the hostile and discriminatory treatment that was being directed toward him by Defendant KENCO. DOSS contacted the Manteno onsite Human Resources personnel complaining about the hostile, discriminatory; disparate treatment and requested that his situation be documented; forwarded to Walsh and placed in his employment file.

65.      Upon information and belief, some of DOSS's similarly situated white, male co-workers whom tested positive for drugs multiple times were not disciplined, suspended or terminated.

66.      Upon information and belief, DOSS's alteration and reduction in shift and hours was against the normal practices of the Defendant KENCO with respect to such alleged discrepancies and as such, violated Defendants normal due process afforded to affected parties.  Defendant's KENCO punitive actions directed toward DOSS was motivated by a racial animus, discrimination and retaliation, and was unjustified and violative of his rights under Federal and the state of Illinois anti-discrimination laws.

67.      Upon information and belief, DOSS's similarly situated, white, non-black, non-African American co-workers were not subjected to humiliation, harassed, and punished in such a manner. Additionally, upon information and belief, Plaintiff was the only staff in his Department affected by the humiliation, harassment and punitive measures directed toward him. None of DOSS's similarly situated, white, non-black, non-African American co-workers were humiliated, harassed and subjected to such punitive measures.

68.    Defendant KENCO's policies dictate that when such infractions and discrepancies occur within the facility, proper company protocol and procedure is to be followed as it relates to the Standard Operating Procedure.

69.    On or about the week of May 12, 2014, Noah Richcreek, a white, non-black, non-African American, male was promoted to a Shift Lead.  Richcreek was not subjected to such discriminatory, unequal terms and conditions of his employment as was DOSS.

70.    Defendant KENCO also hired external candidates for the Shift Lead position. These similarly situated, non-black, non-African American co-workers of DOSS were John Spell, Kyle Rose, and Stephanie Dumas whom were hired during the period of the fall of 2013 to March, 2014.  None of these persons were subjected to such discriminatory, unequal terms and conditions of their employment as was DOSS.

71.    Defendant KENCO's Shift Lead, Stephanie Dumas failed to meet Defendant's minimum qualifications as a Shift Lead inasmuch as she was not certified to operate a forklift, but was hired as such; was paid the prevailing rate of a Shift Lead in March of 2014 and was given first shift Monday-Friday.

72.    Defendant KENCO's newly hired and or promoted, non-black, non-African American Shift Leads received prevailing pay and more favorable assignments and shifts than DOSS and other similarly situated African Americans.

73.    Defendant KENCO's then General Manager, Walsh told new hire Kyle Rose in Plaintiff's presence that DOSS needed to be watched.

74.    On or about May 10, 2014, DOSS's 2.3 shift was indefinitely cancelled by Walsh.

75.    Pete Monstwillo, a white male, assigned to DOSS's shift was reassigned to another shift that guaranteed him 40 hours plus overtime.

14

76.     DOSS was not reassigned to another shift.

77.     On or about May 12 and 13, 2014, DOSS reported the incidents to the Employee Assistance hotline by email, fax and telephone, as well as to the Manteno onsite Human Resources personnel.

78.     Defendant KENCO's Vice President of Operations, Paula Hise called DOSS to follow up on the reported incidents on or about May 14, 2014.

79.     On or about May 14, 2014, Walsh began to openly ignore and ostracize DOSS.  In addition, Walsh would routinely call DOSS into work but would then send him home before the end of Plaintiff's shift.

80.     Such pervasive and blatant discriminatory, hostile and disparate treatment by Defendant KENCO, gave rise to a rash of harassment from other employees and subordinates.

81.     On or about July 2, 2014 I was verbally harassed by Pete Monstwillo because I instructed him to perform a task that was a business necessity.

82.     On or about July 14, 2014, Plaintiff was harassed and threatened by Karl Meyer because I observed and reported a safety violation.

83. On or about July 15, 2014, DOSS reported the hostile, harassing and discriminatory treatment that was being directed toward him by Defendant's, employees.  DOSS contacted the Manteno onsite Human Resources personnel complaining about the hostile, discriminatory; disparate treatment and requested that his situation be documented in addition to reporting this treatment to the then acting GM, David Jabaley.

84.     David Jabaley refused to take action on this complaint; until Doss could produce a witness to attest to what had occurred.  Company policy does not warrant this type of practice or action.

85.     Despite this adverse request to company policy, a third party bystander, Scott Marksteiner, emailed David Jabaley affirming that Doss had been threatened.

86.     Defendant and its agent Jabaley continued to refuse to investigate or follow company policy and procedure.

87.     On or about August 5, 2014, Doss was accused of being insubordinate to a supervisor other than his own, when he was questioned about outbound paperwork on the shift.  This issue involves multiple persons.

88.     Company policy dictates that if shift issues arise, those issues are tobe addressed by the shift management.

89.     Doss' supervisor, Scott Marksteiner, was present along with Noah Richcreek another lead associate.

90.     On or about August 6, 2014, the incident was reported to Mike Manzello.

91.     On or about August 7, 2014, Doss was summoned to David Jabaley's office, where Melissa Hansen the co-pack coordinator was already in the office. Jabaley reprimanded and humiliated Doss in front of Hansen stating that he had been insubordinate and that Doss was suspended; pending further investigation.

92.     Doss was suspended for over ten (10) days.  During that time he was ostracized, marginalized, minimized, and ignored by Defendant's Tammi Fowler, Corporate HR, David Jabaley acting GM, and others.

93.     Eyewitness accounts of the events were provided by DOSS' supervisor, Scott Marksteiner, and lead associate, Noah Richcreek invalidating the alleged insubordination of DOSS.

94.     DOSS, along with those who opposed such treatment, were subjected to discriminatory treatment.

95.     DOSS was paid an hourly rate and at times eligible bonuses. As part of his employment compensation package, he also received or was entitled to medical benefits, insurance, Paid Time Off and overtime as well as other benefits.

96.     DOSS was continually harassed and retaliated against throughout his tenure of employment with Defendant KENCO.

97.     While employed by Defendant KENCO, DOSS was the victim of race discrimination, harassment and retaliation. DOSS is an African American male. Due to his race he was treated differently from other similarly situated non-black, non-African American employees in the terms and conditions of his employment. Upon information and belief, DOSS alleges that he and other African American co-workers belonging to protected classes pursuant to the federal and the state of Illinois anti-Employment Discrimination laws were held to different standards than other employees of Defendant.

98.     DOSS upon information and belief, alleges that African Americans and other employees that are members of the protected class have substantially lower employment and retention rates at KENCO, due to unfavorable terms, conditions and privileges of employment, such as: (1) lack of equal opportunity; (2) unfair and poor treatment; and (3) less tolerance and leniency when making adverse employment decisions, amongst other things. DOSS believes KENCO has a disproportionately lower number of African American employees in various management level positions.

DOSS, upon information and belief, alleges that there were substantially more non-African American employees, especially in management level positions, at the Manteno facility, as well as, other facilities. The non-African American employees at the Manteno facility were treated much more favorably than DOSS and other African American employees.

99.     From 2013-2015, DOSS was unfairly singled out and treated differently from his non-African American colleagues due to his race. DOSS's employment eventually ended on February 28, 2015. The reason given by Defendant KENCO for DOSS's discharge was the early termination of Defendant's contract with Mars, Inc. for breach of contract.

In fact, Defendant KENCO knew that it had no just cause to harass, impose pay disparities; economic sanctions; retaliate against and deny DOSS of opportunities for employment when it: (1) falsely accused DOSS of smelling like "weed"; (2) falsely accused him of lying and manipulating drug and alcohol test results; (3) misrepresented his ability and skills in the performance of his job; and (4) misrepresented to him and misled him to believe that KENCO had conducted an unbiased investigation.

100.    Over the next several weeks, after the May 5, 2014 drug testing incident was reported to the Employment Assistance Program ("EAP") line. Defendant KENCO purported to conduct an unbiased, fair, objective, investigation of the matters at issue. On or about June 2014, Tammi Fowler and Dan Dey, a Director of corporate risk management, at Defendant conducted an interview with DOSS. DOSS also spoke with Paula Hise, VP of Operations on or about May 14, 2014. DOSS was never given a disposition of such investigation.

101.    On, or about June 3, 2014, Walsh, Defendant's then General Manager of the Manteno facility was terminated allegedly for a reason unrelated to the incidents concerning DOSS.

102.     Defendant KENCO failed to completely and fairly investigate the drug testing incident in an unbiased manner, and instead, chose to completely ignore DOSS and failed to remediate and mitigate the situations at hand.  Defendant KENCO maliciously and intentionally failed to follow up with any of DOSS's witnesses and follow company policy with respect to the incident while intentionally misrepresenting to DOSS that a fair and unbiased investigation had been conducted. This caused substantial damage to DOSS. DOSS, upon information and belief, alleges that his race; perceived sexual orientation and retaliation were substantial motivating factors in Defendant KENCO's:

103.     (1) Refusal to pay DOSS his scale pay as a Shift Lead.  (2) Refusal to properly investigate the facts and information provided by DOSS; (3) Failure to treat DOSS and other similarly situated non-white employees of Defendant KENCO fairly with respect to any adverse employment decisions; (4) Defendant's failure to follow its policies, custom and past practice, as it related to the investigation of alleged misconduct; (5) Defendant's failure to follow its policies, custom and past practice as it related to promotions; and (6) its decision to continue to subject DOSS to hostile and discriminatory treatment.

104.     Upon information and belief, Defendant KENCO through its VP of Operations, Paula Hise, openly praised and lauded Walsh as a valued employee and friend, as well as, characterizing his separation from Defendant as a great loss.  Hise made these statements about Walsh despite, Defendant being possessed of first-hand knowledge and evidence of Walsh's violation of company and public policy against discriminatory treatment in the workplace. This constituted another form of harassment, and racial animus by Defendant KENCO.

105.     On or about July 14, 2014, Defendant KENCO willfully submitted false and inconsistent information to Regulatory and Public Policy agencies.  Such as, but not limited to Illinois Department of Human Rights.

19

106.     Defendant KENCO's actions toward DOSS were unlawful, malicious, deceptive, defamatory, slanderous, fraudulent and contrary to principles of fairness and common decency. Defendant intentionally misrepresented to Plaintiff his job's compensation and that they had conducted a fair and impartial investigation. This was not the case. Moreover, DOSS, upon information and belief, alleges that other similarly situated, non-black, non-African American co-workers were not subjected to such treatment.  Defendant has an admitted and documented pattern and practice of disparate treatment towards African Americans.

<u>FIRST CAUSE OF ACTION</u>

(Disparate Treatment — Based on Race under TITLE VII)

107.       DOSS hereby incorporates by reference the allegations in paragraphs 1 through 106 of this Complaint as though fully set forth herein.

108.       This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§20002 et seq., and 42 U.S.C. §1981A, for relief based upon the unlawful employment practices of the above-named Defendant . Specifically, DOSS complaints of Defendant KENCO's violation of Title VII's prohibition against discriminating against any employee on the basis of race, and prohibits discriminatory treatment with respect to the terms, conditions and privileges of employment.

109.       DOSS is an African American male, and thus falls within a protected class. As set forth fully hereinabove, DOSS was discriminated against on the basis of his race in the form of unfair terms, conditions and privileges of employment.

110.       DOSS, upon information and belief alleges, that his race was a substantial factor contributing to the Defendant KENCO's discriminatory treatment of Plaintiff with respect to the terms, conditions and privileges of employment including, but not limited to, unfair, harassing and retaliatory treatment, as well as, the disparity in pay as set forth in paragraphs 1 through 77 herein. Defendant's stated reason for paying DOSS's less than his  similarly-situated non-black, non-African American co-workers  and subjecting him to drug testing were false and were made in bad faith and a mere pretext for discrimination. DOSS was subjected to invidious discrimination and harassment in his employment because of his race, up to, and including, Defendant KENCO's decision to unequally pay PLAINTIFF, deny of pertinent job training, subjecting him to a reasonable suspicion "drug test," as well as a myriad of other willful and intentional discriminatory acts.

21

111.    To the extent that DOSS's race was a substantial factor contributing to the conduct of Defendant KENCO's its agents, the above-described acts of the Defendant constitute unlawful employment practices in violation of TITLE VII.

112.    Defendant KENCO condoned the discriminatory acts and practices as alleged above and, as a direct and proximate result of the unlawful employment practices described herein, DOSS has sustained substantial economic losses, including wages and future earnings, loss of employment and benefits. As a direct and proximate result of the unlawful employment practices described herein, DOSS was, and continues to be caused great mental suffering, severe emotional distress, psychological trauma, and profound humiliation.

113.    Furthermore, Defendant KENCO's intentionally and/or with reckless indifference, engaged in the above stated discriminatory practices against DOSS, contrary to his federally protected rights as guaranteed to him under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e et seq., as amended, and 42 U.S.C. §1981.

114.    The intentional and discriminatory conduct of the Defendant KENCO and its agents, as described in this Complaint, were willful, wanton, deliberate, malicious, egregious and outrageous warranting the imposition of punitive/exemplary damages which will serve as an example and deterrent to the Defendant and others who would commit such similar illegal acts.

115.    As Defendant KENCO engaged in discriminatory employment practices with malice or with reckless indifference to DOSS's federally protected rights, DOSS is entitled to punitive/exemplary damages in addition to compensatory damages and other remedies available under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e et seq., as amended, and pursuant to 42 U.S.C. § 1981A.

116.    Pursuant to TITLE VII DOSS requests an award of attorney's fees and costs against Defendant KENCO.

## SECOND CAUSE OF ACTION

### (Intentional Infliction of Emotional Distress)

117.    DOSS hereby incorporates by reference the allegations in paragraphs 1 through 116 of this Complaint as though fully set forth herein.

118.    As set forth herein, during his employment with Defendant KENCO, DOSS was subjected to a pattern of discrimination and misconduct in the workplace based, in whole or in part on his race.

119.    When Defendant KENCO and its agents and or employees, committed the acts described in this Complaint, they did so deliberately and intentionally to cause DOSS to suffer humiliation, mental anguish and emotional distress. The outrageousness of the above-mentioned conduct is amplified due to the Defendant's agent's abuse of their positions, which give actual and apparent authority over the DOSS, such as is commonly found in employment relationships. Defendant KENCO was aware that DOSS was relying upon his employment to sustain his life. Defendant was aware that in continually harassing, discriminating, and retaliating in the manner in which it did would cause DOSS to suffer extreme emotional distress and other consequential damages.

120.    When Defendant KENCO did the acts described in this Complaint, particularly but not limited to, accusing DOSS of violent behavior and subjecting him to a drug and alcohol test on his day off allegedly based upon its reasonable suspicion policy, accusing him of lying and manipulating drug and alcohol test results, misrepresenting and misleading Plaintiff to believe that it had conducted an unbiased investigation and intentionally conspiring to interfere with his employment, they did so deliberately and intentionally to cause emotional distress to DOSS. The acts of Defendant KENCO cannot  be expected to normally occur in the workplace.

121.    The Defendant by branding DOSS as a drug abuser/or offender, as violent and as being gay when he in fact was not and by disciplining him for alleged violation of company policy and subjecting him to harassment, and unequal terms and condition of his employment by not paying him the prevailing wage and reducing his work hours, eliminating his shift and forcing him to utilize his PTO time to make up a 40-hour work week and constructively discharging him acted intentionally, recklessly and/or with deliberate indifference to a substantial probability that severe emotional distress would result to DOSS.

122.    Defendant KENCO's actions towards DOSS as set out herein are evidence of a pattern of race discrimination which further constitutes outrageous conduct.

123.    Defendant's and its agents and or employees, conduct was outrageous in character and extreme in degree, because said conduct was atrocious and egregious, and went beyond all possible bounds of decency and is utterly intolerable in a civilized community.

124.    The extreme and outrageous conduct of the Defendant KENCO and its agents and or employees toward DOSS was done in a willful and wanton manner, and constituted a disregard for the rights and well-being of DOSS.

125.    The above-said acts of Defendant KENCO, and each of them, constitute an intentional infliction of emotional distress against DOSS. Because the acts taken toward DOSS were carried out by Defendant's agents and or employees with its knowledge and ratification, acting in deliberate, cold, callous, malicious, oppressive and intentional manner in order to damage Plaintiff, DOSS requests the assessment of punitive damages against KENCO in an amount appropriate to punish and make an example of Defendant and to deter future wrongdoing.

126.    As a direct and proximate result of the Defendant KENCO's extreme and outrageous conduct DOSS was, and continues to be caused great mental suffering, severe emotional distress, psychological trauma, and profound humiliation.

127.     Because the Defendant KENCO's extreme and outrageous conduct toward DOSS was improperly motivated, was intentional, willful and wanton, DOSS is entitled to punitive/exemplary damages in addition to compensatory damages.


## THIRD CAUSE OF ACTION

### (Misrepresentation)

128.     DOSS hereby incorporates by reference the allegations in paragraphs 1 through 127 of this Complaint as though fully set forth herein.


129.     During the course of DOSS's employment, Defendant KENCO and its agents made a number of fraudulent misrepresentations to Plaintiff, including:

129.0.0.1.  On or about May 14, 2014, Paula Hise, VP of Operations for Defendant Personnel, willfully, falsely, and fraudulently informed DOSS that an unbiased and accurate investigation will take place.

129.0.0.2. On or about mid-June of, 2014 and at various times thereafter, Tammi Fowler, Dan Dey, and others willfully, falsely, and fraudulently led PLAINTIFF to believe that: (1) Defendant was unbiased: (2) Defendant would fairly investigate the matter; (3) Defendant would investigate all evidence.

130.     The representations made by Defendant and their agents were in fact false.

The true facts were:

DOSS upon information and belief, alleges that Defendant KENCO and its agents and or employees, including Walsh, Fowler, Dey, Manzello, and Lillie had knowledge that Plaintiff was going to be subjected to a contrivance of continual harassment in an attempt discharge; but, instead lied to him.

DOSS is informed and believes, and based thereon, alleges that Defendant KENCO knew it was in their best interests to lie to Plaintiff in order to hide their unlawful actions. At no time did Defendant KENCO or its agents

25

and or employees inform him that they did not intend to conduct the investigation fairly and that Defendants had already decided to look for ways to terminate Plaintiff.

131.    When Defendant KENCO and its agents and or employees made these material misrepresentations, while at the same time concealing material facts, they knew them to be false at the time they were made. The misrepresentations were made with the intent to deceive and to defraud DOSS and to induce him to act in reliance upon these misrepresentations.

132.    DOSS reasonably and justifiably relied on the material misrepresentations made by Defendant KENCO and its agents and or employees. PLAINTIFF was not aware that Defendant had no intention of keeping Plaintiff as an employee. If DOSS would have known about the falsity of the statements, he would not have made certain subsequent decisions which caused Plaintiff great financial harm.

133.    Furthermore, DOSS reasonably and justifiably relied on Defendant and its agents and or employees statements and conduct that led him to believe that he would receive a fair and impartial investigation. Accordingly, DOSS attended interviews with investigators and cooperated with all the investigators' demands. Based on Defendant's misrepresentations, Plaintiff acted (or omitted to act) to his detriment by failing to properly defend himself against the false allegations and by making certain decisions to his detriment. Furthermore, if DOSS knew the investigations were predetermined and pretextual in nature, he would have left the company prior to additional damage being caused.

134.    As a direct and proximate result of DEFENDANTS' conduct, PLAINTIFF has suffered and continues to suffer losses in earnings and employment benefits, the exact amount of which to be proven at trial.

135.      The aforementioned conduct were intentional misrepresentations, deceit and/or concealment of material facts known to Defendant KENCO, with the intention to deprive DOSS of property, legal rights or otherwise causing injury and was willful, wanton and deliberate despicable and with malice which entitles DOSS to an award of exemplary and punitive damages.

136.      DOSS remained employed by Defendant until approximately February 28, 2015, at which time his job was eliminated because Defendant's contract was terminated early by Mars, Inc. because of a breach of contract.

137.      DOSS continued to be harassed and retaliated against as he was not afforded an appropriate opportunity to gain employment with Exel Logistics as other employees not engaged in protective activity.

## FOURTH CAUSE OF ACTION

### (Retaliation in Violation of TITLE VII)

138.      DOSS hereby incorporates by reference the allegations in paragraphs 1 through 137 of this Complaint as though fully set forth herein.

139.    Defendant KENCO wrongfully subjected DOSS to a drug and alcohol test, eliminated Plaintiff's shift and reduced his hours, and denied him training after Plaintiff complained about unlawful discrimination in the terms and conditions of his employment, as well as, opposing the perceived sexual orientation (homosexual). DOSS's complaints of unlawful discrimination was a motivating factor in the Defendant KENCO's decision to subject him to  drug and alcohol tests, eliminate Plaintiff's shift and

to reduce his hours, and to deny him training and conspire to interfere with and terminate

his employment.

140.    Defendant KENCO's stated reason(s) for subjecting DOSS to the drug and

alcohol tests, the elimination of his shift, the reduction of his hours, and the denial of

training are merely a pretext for discrimination and retaliation because the Defendant had

no justifiable reason to deny DOSS the prevailing rate of pay as a Shift lead. Further

Defendant continued to willfully, intentionally, deliberately discriminate against DOSS

by interfering with his subsequent employment opportunity with its successor, Excel.

141.    As a result of Defendant's retaliatory acts, DOSS was wrongfully subjected to

and, ultimately, constructively discharged from his employment and has suffered and

will continue to suffer substantial losses, including loss of past and future earnings

and other employment benefits, and has suffered other monetary and compensatory

damages for, *inter alia,* mental anguish, emotional distress, and humiliation.

142.    Defendant KENCO condoned the discriminatory acts and practices as

alleged above and, as a direct and proximate result of the unlawful employment

practices described herein, DOSS has sustained substantial economic losses,

including wages and future earnings, loss of employment and benefits. As a direct

and proximate result of the unlawful employment practices described herein, DOSS

was, and continues to be caused great mental suffering, severe emotional distress,

psychological trauma, and profound humiliation. Therefore, DOSS is entitled to

compensatory damages pursuant to 42 U.S.C. § 1981A.

143.    The unlawful employment practices of the Defendant KENCO and its

agents or employees, as described in this Complaint, were despicable, oppressive,

fraudulent, malicious, and with a wanton and reckless disregard of DOSS's rights and the consequences to him, so as to justify an award of punitive damages pursuant to 42 U.S.C. § 1981A.


## FIFTH CAUSE OF ACTION

(Hostile Work Environment Based on Race)

144.    DOSS hereby incorporates by reference the allegations in paragraphs 1 through 143 of the Complaint as though fully set forth herein.

145.    DOSS was subjected to slurs, insults, jokes or other verbal comments or intimidation of a racial nature, as well as, perceived sexual orientation innuendos and/or other verbal conduct of a sexual nature.

146.    The conduct was unwelcome.

147.    The conduct was sufficiently severe or pervasive to alter the conditions of the DOSS's employment and create a racially charged and abusive or hostile work environment;

148.    DOSS perceived the working environment to be abusive or hostile; and

149.    A reasonable person in the DOSS'S circumstances would consider the working environment to be abusive or hostile.

29

PRAYER FOR RELIEF

The conduct of the Defendant KENCO and its agents and or employees, , as set forth herein, in violating DOSS's rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§2000 et seq.; the Civil Rights Act of 1866, as amended by the Civil Rights Act of 1991, 42 U.S.C. Section 1981; and the common law of the state of Illinois, caused injuries, damages and harm to DOSS, including but not limited to, past and future economic loss, loss of reputation, shame, humiliation, pain and suffering, inconvenience, mental anguish, impairment of the quality of life; and consequential losses;

WHEREFORE, Plaintiff NATHAN DOSS prays for judgment as follows:

A.  A declaratory judgment that Defendant KENCO LOGISTIC SERVICES, LLC
violated DOSS's right to be free from discrimination in the workplace pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§2000e et seq.; the Civil Rights Act of 1866, as amended by the Civil Rights Act of 1991, 42 U.S.C. §1981; 42 U.S.C. §1981A.

B.  The entry of an injunction ordering Defendant KENCO LOGISTIC SERVICES, LLC to make DOSS whole with full back pay, benefits and front pay.

C.  An award to DOSS for compensatory damages in an amount to be shown at trial for past and future economic and non-economic losses, including extreme emotional distress and mental anguish, impairment of the quality of life; and consequential loses;

D. An award to DOSS for exemplary and/or punitive damages in an amount shown at

trial;

E. An award to DOSS of reasonable attorneys' fees and costs, including but not limited to

expert witness fees, as provide in Title VII of the Civil Rights Act of 1964, as amended,

42 U.S.C.§2000e-5(k), 42 U.S.C. §1981A, 42 U.S.C.§1988 and as provided under

state law;

F. An award of interests on any awards at the highest rate allowed by law; and

G. Such other and further relief as this Court deems just and appropriate to be

determined by a jury;

## PLAINFIFF DEMANDS A TRIAL BY JURY ON ALL COUNTS

Respectfully Submitted this 7 Day of December 2015.

Nathan E. Doss

BY: