IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| NATHAN E. DOSS | ) |
| | ) |
| PLAINTIFF, | ) |
| | ) |
| VS. | ) CASE No. 15-cv-02287-CSB-EIL |
| | ) |
| KENCO LOGISTIC SERVICES, LLC, et al. | ) |
| | ) |
| DEFENDANTS. | ) |

PLAINTIFF'S RESPONSE

FILED
JAN 24 2017
CLERK OF THE COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA, ILLINOIS

**NOW COMES** Plaintiff, NATHAN E. DOSS ("Plaintiff") pro se, and responds to the court and for his good cause shown in support of his response Plaintiff states the following; THAT:

1. Plaintiff in no way ever has intended to anger or disrespect the Court.
2. Plaintiff in all honesty is frustrated and overwhelmed.
3. Plaintiff understands that the Court is also frustrated and incensed.
4. Plaintiff has tried within the best of his ability to be complainant and proactive.
5. Plaintiff filed this matter before the court seeking justice.
6. Plaintiff accepts responsibility for actions that may have been offensive, but not intentional.
7. Plaintiff was working on December 20, 2016, the day of the last status call.
8. Plaintiff somehow missed the call and tried to call back but got a recording.
9. Plaintiff had contacted Defendant's Counsel on the morning on December 20, 2016 regarding Defendant's Discovery request to Plaintiff.

10. Defendant's counsel was to contact Plaintiff back on the same day within twenty (20) minutes regarding Defendant's Discovery request issued to Plaintiff on December 14, 2016. See Exhibit A

11. Plaintiff followed up with Defendant several times.

12. To date Defendant's counsel has not contacted Plaintiff regarding Plaintiff's queries, with the exception of a Motion to Compel on January 6, 2017.

13. Defendant indicated on its Certificate of Service that on October 4, 2016 Defendant emailed and mailed a copy of Defendant's Discovery request to Plaintiff.

14. Plaintiff denies receiving by email or mail a copy of Defendant's request for Discovery in October of 2016.

15. Pointedly, Plaintiff only received a partial request for Discovery from Defendant, as the exhibits and addendums were missing.

16. Plaintiff repeatedly tried to speak with Defendant, but Defendant refused to respond to Plaintiff.

17. Plaintiff cannot attest to whether or not Defendant actually mailed Defendant's Discovery Request, but Plaintiff can attest that he did not receive them by email or mail.

18. What further raises an eyebrow of contention is, when Defendant allegedly resent the Discovery Request on December 14, 2016:

    a.    It was entitled in an email dated December 14, 2016 and not the forwarded email that was supposed to have been sent on October 4, 2016 according to the certificate of service. See Exhibit A

    b.    All of the exhibits and addendums were not attached. See Exhibit B

    c.    Furthermore, the Certificate of Service did not have an email address listed for Plaintiff. See Exhibit A

    d.    Defendant did not contact Plaintiff for almost two (2) months after the Discovery was sent. See Exhibit A

    e.    Defendant based upon past behavior has not been that ingratiating to not raise an issue.

19. Plaintiff also contends that Defendant's Discovery states that it is due within thirty (30) days of receipt.

20. Plaintiff contends that the Discovery was not due until on or about January 14, 2017.

21. Plaintiff does not understand how Defendant filed a motion to compel on or about January 6, 2017, prior to the due date.

22. Plaintiff believes that Defendant made the motion in bad faith, as Defendant knew that Plaintiff had just received the Discovery requests.

23. Plaintiff asserts that this is not the first time Plaintiff has not received correspondence from Defendant.

24. Plaintiff did not receive Defendant's motion to dismiss at all.

25. Plaintiff became aware that Defendant filed a motion to dismiss because of a court notification.

26. Plaintiff was prompted that a response would be required.

27. Plaintiff had to go to extreme lengths and exercise vast resources to obtain the motion.

28. Plaintiff required an extension of time to answer because of this.

29. Plaintiff often times required extensions of time to answer because Plaintiff did not timely receive correspondence from Defendant.

30. Plaintiff more than often time received it just days before it was to be timely filed.

31. Contrarily, with Defendant Mars, Plaintiff has timely received correspondence from Defendant.

32. Pointedly, during this same relative time that Defendant Kenco was allegedly tendering Discovery Defendant Mars did as well.

33. Plaintiff tendered to Mars their Discovery request as agreed.

34. Plaintiff initially thought that it perhaps was the mail.

35. However, Plaintiff does not believe it was the mail.

36. Plaintiff believes that there are other motivating factors that have contributed to Plaintiff being behind the eight (8) ball, so to speak.

37. Plaintiff believes that this has contributed to a contentious air around Plaintiff's matters before the court.

38. Admittedly, Plaintiff had become frustrated, but nevertheless committed to the cause.

39. Plaintiff also believes from the content of the Discovery in comparison to the other Defendant's discovery and the allegations that something is askew.

    i. For example, the Defendant wants to know Plaintiff's Grade Point Average-GPA.

40. Plaintiff cannot reasonably understand how Plaintiff's GPA could be relevant to any party's claim or defense.

41. Or perhaps would Defendant suggest that a low GPA was a precursor to… or it precipitated the… or it warranted the …or it justified….

42. Defendant did not require as a prerequisite, and or term and condition of employment a prospective employee and employee's Grade Point Average.

43. Plaintiff also believes that this and other requests are not in proportionality to the needs of the case.

    i. For example, criminal and civil litigation.

44. As a prerequisite, and term and condition of employment each prospective employee must pass a drug screen and submit to a criminal background check, as well as, a credit check. See Exhibit C

45. Defendant required each prospective/employee to sign off on the offer letter of employment authored by the Vice President and it be countersigned by Defendant. See Exhibit C

46. Consequently, Defendant is already in possession of that information and requesting such is duplicative.

47. Pointedly, there are a number of items that Defendant it requesting that it is already in possession of.

48. Plaintiff has had a number of unique, rare and extraordinary opportunities and experiences thrust upon him since Plaintiff began seeking external justice with various governmental agencies.

    a. Plaintiff to date has not even had one complainant's interview during none of the nine (9) formal charges filed at the IDHR and EEOC.

    b. Plaintiff to date has not even participated in Fact Finding Conference regarding the nine (9) formal charges filed at the IDHR and EEOC.

    c. Plaintiff's evidence submitted to the IDHR on behalf of the IDHR and EEOC investigations is not contained in Plaintiff's files; although the investigator states that he had received it to Plaintiff's attorney.

    d. Plaintiff's witnesses were never interviewed.

    e. Plaintiff has raised these issues with the IDHR, the Office of Executive Inspector General of Illinois, the Chief Legal Counsel and Director of the IDHR.

    f. To date Plaintiff has not gotten a suitable answer.

    g. Contrarily, Defendants had an opportunity to put on their Case-In chief for all nine (9) charges.

        i. Their witnesses were interviewed; even persons without firsthand information

        ii. Their attorney was their witness and their attorney

49. The most recent and almost rarest opportunity presented itself in Defendant's Discovery Interrogatory #5 and Production request #33.

50. Defendant's Interrogatory #5-" Identify each and every telephone number, including land line and cell phone numbers, you have used from January 1, 2012 to the present. For each number identified, state the service provider associated with each number *(e.g.,* AT&T, Verizon, Sprint, etc.)."

51. Plaintiff thought again that the content of the Interrogatory in comparison to the other Defendant's discovery and the allegations made that something is askew.

52. Plaintiff cannot reasonably understand how or why the telephone numbers that Plaintiff used during the 2012 to date could be relevant to any party's claim or defense.

53. Plaintiff's allegations are not surrounded around any company policy that deals with communications; nor has Defendant's administered discipline to Plaintiff been surrounded by or the center of any communication infraction.

54. Plaintiff also felt initially that this question was not proportional to the needs of the case.

55. Out of all the questions that Defendant could or should have asked relative to the matters at hand this question is obscure in Plaintiff's mind to the matters at hand.

56. Defendant went on to request "All documents received in this lawsuit pursuant to any subpoena issued by you and copies of all correspondence related to such subpoenas."

57. Plaintiff again thought that this specific request for production in comparison to the other Defendant's discovery and the allegations made that something is askew.

58. Plaintiff could somewhat rationalize how this could or would be relative to Defendant;

59. However, when Plaintiff thought the two in connection, Plaintiff realized that Defendant's request directly correlated to Plaintiff's request from the Clerk's Office for a Subpoena to obtain phone records.

60. Plaintiff remembers coming to the Clerk's Office during the summer of 2016 inquiring about obtaining a Subpoena for phone records.

61. Plaintiff was informed by the Clerk's Office that a subpoena could not be given to him unless it was granted by the presiding Judge.

62. Plaintiff feels that Defendant's counsel's proclivity to specifically hone in and refine their questions to reflect Plaintiff's request is something like a phenomenon at the very least.

63. Plaintiff actually feels like it was one in a centillion chance that this could have occurred, or perhaps like finding a needle in a haystack, or even better yet winning the lottery without purchasing a lottery ticket.

64. Again for Plaintiff another example of oddities, abnormalities and or deviations in what Plaintiff and other reasonable persons would consider the standard operating procedures in the administration of justice

65. Plaintiff cannot with 100% certainty assert that Defendant did not mail the Discovery Requests, as Plaintiff has had issues with correspondence being mailed to the court.

66. Plaintiff has mailed documents to the court and according to the U.S. Postal Service they confirmed delivery of said documents, but according to when the document was filed, seemingly the Clerk's Office was not in possession of them.
    a. For example, Plaintiff mailed a document dated October 3, 2016; the Post Office indicated that it had been delivered on October 4, 2016. It was not filed stamped until October 13, 2016. Plaintiff had not idea and was totally unaware that they were not at the Clerk's Office.

67. Plaintiff and others had had similar experiences with mail being confirmed as delivered and not filed with the Clerk's Office until sometime in the future of that delivery date.

68. Plaintiff has a family a wife and four small children under the age of seven (7).

69. Plaintiff works fulltime and is in school.

70. Plaintiff and others in the sole attempt, only, to be complainant and avoid late filings and missing deadlines would hand deliver papers for one another only in an effort to be timely and complainant.

71. Plaintiff and others sometimes had conflicting commitments or inabilities that disallowed them to hand carry their own documents to the Clerk's Office.

72. Plaintiff and others were no means trying to overstep their boundaries, but stay proactive and complainant.

73. Perhaps Plaintiff and others in their zeal and quest overstepped their boundaries.

74. Plaintiff and others didn't know that it would be problematic.

75. Plaintiff and others would definitely not want to do anything to jeopardize their standings with the court.

76. Plaintiff also contends that due to the inordinate amount of oddities, inconsistency and deviations from the standard procedures and protocols in the handling of Plaintiff's case since its filing at the IDHR and EEOC to date, Plaintiff has probably become over sensitive in capitalizing and reacting to every opportunity that presents itself to engage Defendant about any and every issue; i.e. Default judgment, amended complaints, and so forth.

77. Plaintiff tendered to Defendant the Discovery request on January 14, 2016 by us mail.

With respect to Plaintiff, Plaintiff has tried to be complainant to the deadlines and has not unduly tried to delay these matters. However, there have been a lot of circumstances and variables that Plaintiff had no foreknowledge of and perhaps out of naivety, knowledge, other commitments, frustrations, and emotions Plaintiff may not have approached the situation properly.

Plaintiff began this journey of justice prior to filing this case. Plaintiff has taken a lot of abuse, humiliation, trauma and it still continuing on. Our actions, stories, and stances, are forever memorialized for the world to see. There is no glory in standing up for the truth, it is embarrassing and sometimes shameful and most of hurtful. The stances we took will forever affect our lives and assuredly everyone will not have the same appreciation for the quest for justice as we have.

Plaintiff has to have hope in God and in justice. Plaintiff has to have hope that one day respect and equality will be common place. Plaintiff believes you have to stand up for what you believe in. Plaintiff has to have to hope that his children or someone else's child or just someone in general does not have to be abused, humiliated, mocked, threatened, paid less, treated poorly or differently all in a day's work just to earn a living.

Admittedly at times Plaintiff has been taken aback, overwhelmed, emotional and a lot of other indescribable things, but at no time has Plaintiff taken this stance for anything other than the principle of right. Plaintiff has wanted to give up and quit, as it is a lot, but there are three (3) factors that stop me from throwing in the towel: I made a commitment/promise, a friend lost his life standing up for me and that it is my responsibility to stand up for what I believe. There is nothing that can bring Scott back to life or ease the guilt and anguish in my mind from the loss of Scott, but I can certainly quest that justice be served.

For the foregoing reasons, I ask that the court please allow me to continue the judicial process.

**WHEREFORE,** Plaintiff requests that this Honorable Court grant that Plaintiff be able to continue.

Respectfully submitted,<br>
**NATHAN E. DOSS**

By: _____
Pro Se
NATHAN E. DOSS
1124 Abbot Lane
University Park, IL 60461
708.534.0536

## CERTIFICATE OF SERVICE

Please take notice that on January 23, 2017 I, NATHAN E. DOSS, hereby, certify that I did file a REPSONSE TO THE COURT with the Central District of Illinois Urbana Division in the foregoing matter of Case No. 15-cv-02287-CSB-EIL and have served the persons identified on the docket's service list via Notice of Electronic Filing generated by the Court's CM/ECF system.

Pro Se
NATHAN E. DOSS
1124 Abbot Lane
University Park, IL 60461
708.534.0536

Kimberly J. Overbaugh
Thomas R. Davies
Harmon & Davies, P.C.
2306 Columbia Ave
Lancaster, PA 17603

Jody Wilner Moran
Julia P. Argentieri
Jackson Lewis P.C.
150 North Michigan Ave., Suite 2500
Chicago, IL 60601