## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | | |
|---|---|---|
| **NATHAN E. DOSS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 15-cv-2287** |
| | ) | |
| **KENCO LOGISTIC SERVICES, LLC,** | ) | **Judge Colin Stirling Bruce** |
| **et. al.** | ) | **Magistrate Judge Eric I. Long** |
| | ) | |
| **Defendants.** | ) | |

### INDIVIDUAL DEFENDANTS' ANSWER AND DEFENSES
### TO PLAINTIFF'S SECOND AMENDED COMPLAINT

Defendants, Kelvin Walsh ("Walsh"), Tammi Fowler ("Fowler"), Mario Lopez ("Lopez"), Valerie Lilley ("Lilley") and David Jabaley ("Jabaley") (collectively "Defendants"), by and through its attorneys, Jody Wilner Moran, Jody Kahn Mason and Julia Pearce Argentieri of Jackson Lewis P.C., and for their Answer and Defenses to Plaintiff's Second Amended Complaint, states as follows:

1.       The action is brought to remedy the violations of DOSS's civil rights and to redress the unlawful and discriminatory employment practices of KENCO. This action arises out of the conduct of KENCO's employees and its employment practices of (1) Unequal terms and condition of employment for unequal pay; (2) A. Harassment based in whole or in part upon his race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-16 et seq., and the Civil Rights Act of 1866, as amended by the Civil Rights Act of 1991 and 42 U.S.C. §1981, (3) B. Harassment based upon perceived sexual orientation (homosexual) and (4) C. Harassment based upon retaliation for making an internal and external complaints of discrimination.

**ANSWER**:    Defendants admit Plaintiff purports to bring an action against Defendants to purportedly redress unlawful and discriminatory employment practices of Kenco as set forth herein, but deny that they violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16, *et seq.,* the Civil Rights Act of 1866, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981, or any other statute or law, and further deny that Plaintiff is entitled to any relief whatsoever.

2.    This in part, an action authorized and instituted pursuant to the Civil Rights of 1964, 42 U.S.C. §2000e, et seq.; the Civil Rights Act of 1866, as amended by the Civil Rights Act of 1991, 42 U.S.C. §1981; 42 U.S.C. 1981A, 42 U.S.C. §1988 Illinois common law.

**ANSWER**:    Defendants admit Plaintiff purports to bring an action against Defendants pursuant to the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.,* the Civil Rights Act of 1866, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981, 42 U.S.C. § 1981A, 42 U.S.C. §1988, and Illinois common law, but deny that Defendants violated these or any other statutes or laws, and further deny that Plaintiff is entitled to any relief whatsoever.

3.    The jurisdiction of this court is predicated upon 28 U.S.C. §§1331 and 1343, to redress the unlawful deprivation of Plaintiff's rights secured, guaranteed and protected by federal law. The Court also has jurisdiction pursuant to 28 U.S.C. 2 §§2201 and 2202 relating to declaratory judgments. This Court may also exercise pendent jurisdiction over Plaintiff's state law claims arising from a common nucleus of operative facts pursuant to 28 U.S.C. 1367.

**ANSWER**:    Defendants do not contest this Court's jurisdiction over Plaintiff's claims in this action.  Defendants deny the remaining allegations contained in Paragraph No. 3, including the allegation that Defendants unlawfully deprived Plaintiff of any rights protected by law.

4.    Venue is proper in the United States District Court for the Central District of Illinois, Eastern Division pursuant to 28 U.S.C. 1391 (b) wherein Doss worked and where KENCO regularly conducts business and where are wrongful conduct complained of herein occurred.

**ANSWER**:     Defendants do not dispute that venue is proper in this District.  Defendants deny that Doss was subjected to wrongful conduct as set forth in his Second Amended Complaint.

5.     DOSS is a citizen of the United States and is an African American male and at all relevant times herein; he has resided in Illinois, in the County of Will and was an employee of KENCO within the meaning of the Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, et seq., and applicable case law.

**ANSWER**:     Defendants admit that Doss was an employee of Kenco within the meaning of Title VII of the Civil Rights Act of 1964, as amended.  Upon information and belief, Defendants admit the remaining allegations contained in Paragraph No. 5.

6.     DOSS was employed with KENCO and its predecessors, whom at all times acted as agents of Mars, Inc., since on or about August 2012 through various 3rd party management companies; beginning with 4T's Management Company and then with KENCO since April 2013.

**ANSWER**:     Defendants admit that Plaintiff was formerly employed by Kenco Logistic Services, LLC beginning in April of 2013. Defendants deny the remaining allegations contained in Paragraph No. 6.

7.     At all relevant times herein, Defendant KENCO was a 3rd party Logistics management servicing agent for Mars, Incorporated employing over 3000+ employees nationwide and is a Tennessee Limited Liability Company. KENCO maintained an office in Manteno, Illinois and currently maintains offices in Bolingbrook, Illinois, and conducts business within the State of Illinois and Cook County and within the judicial district. Defendant KENCO'S primary place of business is in Chattanooga, Tennessee and is an employer within the meaning of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. g §2000e, et seq.. [sic]

**ANSWER**:     Defendants admit that Kenco is a third party logistics company and that Kenco is headquartered in Chattanooga, Tennessee and formerly maintained a place of business in Manteno, Illinois. Defendants deny that Kenco is an agent of Mars,

3

Incorporated. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph No. 7 and therefore deny the same.

DOSS has complied with the administrative prerequisites of §506 of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-5 as follows:

**ANSWER:**    The allegations contained in this introductory paragraph constitute legal conclusions to which no answer is required. To the extent that an answer is required, Defendants deny the allegations contained in this introductory paragraph.

8.    On or about, MAY 7, 2014, Doss timely filed a formal charge of discrimination with the Illinois Department of Human Rights (hereafter the "IDHR") which was cross-filed with the Equal Employment Opportunity Commission (hereafter "EEOC") as Charge Numbers 2014CF2858 and 21B-2014-01536, respectively.

**ANSWER**:    Defendants lack sufficient knowledge and information to form a belief regarding the truth of the remaining allegations contained in Paragraph No. 8 and therefore deny the same.

9.    On or about, May 21, 2014, Doss timely filed a formal charge of discrimination with the Illinois Department of Human Rights (hereafter the "IDHR") which was cross-filed with the Equal Employment Opportunity Commission as Charge Numbers 2014CF2992 and 2IB-2014-01634, respectively.

**ANSWER**:    Defendants lack sufficient knowledge and information to form a belief regarding the truth of the remaining allegations contained in Paragraph No. 9 and therefore deny the same.

10.    On or about, June 9, 2014, Doss timely filed a formal charge of discrimination with the Illinois Department of Human Rights (hereafter the "IDHR") which was cross-filed with the

Equal Employment Opportunity Commission as Charge Numbers 2014CF3161 and 21B-2014-01747, respectively.

**ANSWER**:     Defendants lack sufficient knowledge and information to form a belief regarding the truth of the remaining allegations contained in Paragraph No. 10 and therefore deny the same.

      11.     On or about, May 29, 2014, Doss timely filed a formal charge of discrimination with the Illinois Department of Human Rights (hereafter the "IDHR") which was cross-filed with the Equal Employment Opportunity Commission as Charge Numbers 2014CF3057 and 218 -2014-01685, respectively.

**ANSWER**:     Defendants lack sufficient knowledge and information to form a belief regarding the truth of the remaining allegations contained in Paragraph No. 11 and therefore deny the same.

      12.     On or about, August, 2014, Doss timely filed a formal charge of discrimination with the Illinois Department of Human Rights (hereafter the "IDHR") which was cross-filed with the Equal Employment Opportunity Commission as Charge Numbers 2105CF0310 and 21B-2014-02258, respectively.

**ANSWER**:     Defendants lack sufficient knowledge and information to form a belief regarding the truth of the remaining allegations contained in Paragraph No. 12 and therefore deny the same.

      13.     On or about, October 3, 2014, DOSS timely filed a formal charge of discrimination with the Illinois Department of Human Rights (hereafter the "IDHR") which was cross-filed with the Equal Employment Opportunity Commission as Charge Numbers 2015CF0822 and 21B-2015¬00009, respectively.

**ANSWER**:     Defendants lack sufficient knowledge and information to form a belief regarding the truth of the remaining allegations contained in Paragraph No. 13 and therefore deny the same.

14.     On or about, November 5, 2014, DOSS timely filed a formal charge of discrimination with the Illinois Department of Human Rights (hereafter the "IDHR") which was cross-filed with the Equal Employment Opportunity Commission as Charge Numbers 2015CF1145 and 21B-2015¬0239, respectively.

**ANSWER**:    Defendants lack sufficient knowledge and information to form a belief regarding the truth of the remaining allegations contained in Paragraph No. 14 and therefore deny the same.

15.     On or about, December 22, 2014, DOSS timely filed a formal charge of discrimination with the Illinois Department of Human Rights (hereafter the "IDHR") which was cross-filed with the Equal Employment Opportunity Commission as Charge Numbers 2015CF1160 and 21B-2015¬0571, respectively.

**ANSWER**:    Defendants lack sufficient knowledge and information to form a belief regarding the truth of the remaining allegations contained in Paragraph No. 15 and therefore deny the same.

16.     DOSS promptly and diligently accommodated all IDHR and EEOC requests for information and fully cooperated in the agency's investigation of this matter.

**ANSWER**:    Defendants lack sufficient knowledge and information to form a belief as to the truth of the allegations contained in Paragraph No. 16 and therefore deny the same.

17.     DOSS has exhausted all available administrative remedies in accord with the aforementioned statutes prior to instituting this Civil Action, and DOSS formally requested a Notice of Right to Sue from EEOC on August 17, 2015 and September 4, 2015, respectively. No administrative prerequisites are required before a plaintiff files a complaint pursuant to the Civil Rights Act of 1866, as amended by the Civil Rights Act of 1991, 42 U.S.C. §1981.

**ANSWER**:      Defendants lack sufficient knowledge and information to form a belief regarding the truth of the remaining allegations contained in Paragraph No. 17 and therefore deny the same.

18.      DOSS was employed with predecessors of KENCO on or about April 14, 2012 as a Warehouse Associate, for 3rd party management company whom at all times acted as agents of Mars, Inc., beginning with 4T's Management Company and then with KENCO on April 21, 2013 and was promoted to Warehouse Lead in December of 2013 at the Mars' warehouse in Manteno, Illinois.

**ANSWER**:      Defendants admit that Doss was employed by Kenco and deny that Kenco is an agent of Mars, Inc.  Defendants lack sufficient knowledge and information to form a belief regarding the truth of the remaining allegations contained in Paragraph No. 18 and therefore deny the same.

19.      At all relevant times, Defendant KENCO employed in excess of fifteen (15) employees for at least twenty (20) calendar weeks in 2013, 2014 and 2015.

**ANSWER**:      Defendants lack sufficient knowledge and information to form a belief regarding the truth of the remaining allegations contained in Paragraph No. 19 and therefore deny the same.

20.      At all relevant times, all matters regarding compensation, terms, conditions, rights and privileges of DOSS's employment were governed and controlled by Defendant KENCO.

**ANSWER**:      Defendants admit the allegations contained in Paragraph No. 20.

21.      At all relevant times DOSS possessed the skills, experience and qualifications necessary to work in his employment position and adequately and completely performed all of the functions, duties and responsibilities of his employment with Defendant KENCO.

**ANSWER**:      Defendants deny the allegations contained in Paragraph No. 21.

22.     KENCO, upon information and belief was acting as the agent of Mars and in its conduct and actions as alleged herein and was acting in a capacity within the scope of its authority, or, if said conduct was outside the scope of its authority, said conduct was known; authorized and ratified by Mars.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 22.

23.     Plaintiff filed charges that were dually filed at the Illinois Department of Human Rights and EEOC.

**ANSWER**:    Defendants lack sufficient knowledge and information to form a belief regarding the truth of the remaining allegations contained in Paragraph No. 23 and therefore deny the same.

24.     Kenco Logistics is a 3rd party logistics company that manages warehouse and distribution centers for other companies.

**ANSWER**:    Defendants admit the allegations contained in Paragraph No. 24.

25.     Kenco Logistics stated to the Illinois Department of Human Rights in its Position Statement beginning on or about November 2014 in case number 2014CF0475, and subsequently again in case number 2014CF2858, 2014CF2992, 2014CF3057, 2014CF3161, 2015CF0310, 2015CF0811, 2015CF1145, 2015CF0342, 2015CF0990, 2015CF1315, 2015CA1464, 2014CF3162, 2015CF0003, 2015CF0006, 2015CF0515, 2015CF0516, 2051CF0699, 2015CA1054, 2015CA1590 and others that "Kenco is a third-party logistics company ("3PL") that operates and manages warehouses and order fulfillment operations for other companies."

**ANSWER**:    Defendants lack sufficient knowledge and information to form a belief regarding the truth of the remaining allegations contained in Paragraph No. 25 and therefore deny the same.

26.    On April 21, 2013, Kenco began managing such a warehouse in Manteno, Illinois for Mars, Inc.

**ANSWER**:    Defendants admit the allegations contained in Paragraph No. 26.

27.    Kenco Logistics is a privately held company in the state of Tennessee.

**ANSWER**:    Defendant Jabaley admits the allegations in Paragraph 27. The remaining Defendants lack sufficient knowledge and information to form a belief regarding the truth of the remaining allegations contained in Paragraph No. 27 and therefore deny the same.

28.    Kenco Logistics corporate structure, operating structure and legal structuring is not synonymous with any other company.

**ANSWER**:    Defendants object to Paragraph No. 28, as the allegations contained therein are vague and ambiguous.  Subject to and without waiving said objections, Defendants admit the allegations contained in Paragraph No. 28.

29.    Kenco Logistics is part of the Kenco Group.

**ANSWER**:    Defendant Jabaley admits that Kenco Logistic Services, LLC is a wholly owned subsidiary of Kenco Group, Inc.  The remaining Defendants lack sufficient knowledge and information to form a belief regarding the truth of the remaining allegations contained in Paragraph No. 29 and therefore deny the same.

30.    Kenco Group current Chairman & CEO is Jane Kennedy Greene.

**ANSWER**:    Defendant Jabaley admits that Jane Kennedy Greene is the current Chairman and CEO of Kenco Group, Inc. The remaining Defendants lack sufficient knowledge and information to form a belief regarding the truth of the remaining allegations contained in Paragraph No. 30 and therefore deny the same.

31.    Kenco Group President and COO David Caines.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 31.

32.    Kenco Logistics was hired to Manage [sic] the Mars, Inc. Manteno facility in Manteno, IL.

**ANSWER**:    Defendants admit the allegations contained in Paragraph No. 32.

33.    Mars, Inc. is a privately held company in Virginia.

**ANSWER**:    Defendants lack sufficient knowledge and information to form a belief as to the truth of the allegations contained in Paragraph No. 33 and therefore deny the same.

34.    Mars, Inc. paid Kenco Logistics a management fee to manage the Mars Manteno facility.

**ANSWER**:    Defendants admit the allegations contained in Paragraph No. 34.

35.    Mars, Inc. passed thru their costs through Kenco Logistics with the exception of the lease, taxes, fire protection, insurance, rack expense/amortization, management fee, material handling fee were direct pays.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 35.

36.    Specifically, Mars, Inc. passed thru Kenco Logistics the salaries of all the employees (temporary and part & full time employees), as well as, any invoices of the Mars Manteno facility.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 36.

37.    This function performed was synonymous to that of the services provided by ADP, LLC.

**ANSWER**:    Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 37 and therefore deny the same.

38.    Mars, Inc. managed Kenco Logistics.

**ANSWER**:    Defendant denies the allegations contained in Paragraph No. 38.


39.    Specifically. Mars, Inc. would provide daily guidance to the Mars, Manteno

facility.

**ANSWER**:    The allegations contained in Paragraph No. 39 are vague and ambiguous with respect to the phrase "provide daily guidance."  As such, Defendants deny the allegations contained in Paragraph No. 39.


40.    a. On site Regional District Manager.

**ANSWER**:    The allegations contained in Paragraph No. 40(a) are vague and ambiguous. Subject to and without waiving said objections, Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 40 and therefore deny the same.


41.    b. Morning meetings regarding the daily "Plan".

**ANSWER**:    The allegations contained in Paragraph No. 41(b) are vague and ambiguous. Subject to and without waiving said objections, Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 41(b) and therefore deny the same.


42.    c. Fulfillment orders generated by Mars, Inc. through the WMS-SAP.


**ANSWER**:    The allegations contained in Paragraph No. 42(c) are vague and ambiguous. Subject to and without waiving said objections, Defendants lack sufficient knowledge and information to form a belief regarding the truth of the remaining allegations contained in Paragraph No. 42(c) and therefore deny the same.


43.        i. Through put of a Billion pounds or more annually of candy at the Mars Manteno facility.

**ANSWER**:    The allegations contained in Paragraph No. 43(i) are vague and ambiguous.  Subject to and without waiving said objections, Defendants lack sufficient knowledge and

information to form a belief regarding the truth of the allegations contained in Paragraph No. 43(i) and therefore deny the same.

44.    d. Mars, Inc. warehouse quality manual.

**ANSWER**:    The allegations contained in Paragraph No. 44(d) are vague and ambiguous. Subject to and without waiving said objections, Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 44(d) and therefore deny the same.

45.    e. Cross-functional collaboration between departments.

**ANSWER**:    The allegations contained in Paragraph No. 45(e) are vague and ambiguous. Subject to and without waiving said objections, Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 45(e) and therefore deny the same.

46.    f. Employee incentives.

**ANSWER**:    The allegations contained in Paragraph No. 46(f) are vague and ambiguous. Subject to and without waiving said objections, Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 46(f) and therefore deny the same.

40. [sic] Mars Manteno was a part of the network of Mars distribution centers.

**ANSWER**:    Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 40 and therefore deny the same.

41.    Mars Manteno was the Midwest distribution center.

**ANSWER**:    Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 41 and therefore deny the same.

42.    Mars Manteno serviced twelve (12) Midwestern states and Canada.

**ANSWER**:    Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 42 and therefore deny the same.

42.[sic]Mars Manteno was infrastructually similarly situated to the other four (4) distribution centers in the network in organization. For example, but not limited to: a. General Manager.

**ANSWER**:    Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 42 and therefore deny the same.

43.    b. Operations Manger

**ANSWER**:    Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 43 and therefore deny the same.

44.    c. Accounting/Human Resources

**ANSWER**:    Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 44 and therefore deny the same.

45.    d. And the like…

**ANSWER**:    Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 45 and therefore deny the same.

43. [sic] Organizationally the Mars Manteno General Manager answered to and conferred with the onsite RDM of Mars, Inc., as a matter of the course of ordinary business operations.

**ANSWER**:    Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 43 and therefore deny the same.

44.    *Black's Law Dictionary* defines "employee" as "a person in the service of another under any contract of hire, express or implied, oral or written, where the employer has the power or right to control and direct the employee in the material details of how the work is to be performed.

**ANSWER**:    Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 44 and therefore deny the same.

45.    Mars, Inc. provided and stipulated such terms and conditions of employment, to Kenco Logistics, as well as, compliance; specifically with the Mandates of Mars outlined in the Mars US Warehouse Quality Manual and public policy, including but not limited to FSMA (Food safety and Modernization Act, 2001 Bioterrorism Act, CFR Title 21, and any other applicable public policy, just as it would with any employee and as it had done with the previous Management Company at the Mars Manteno Facility and its various other warehouse.

**ANSWER**:    Defendants lack sufficient knowledge and information to form a belief regarding the truth of the remaining allegations contained in Paragraph No. 45 and therefore deny the same.

46.    Mars, Inc. required Kenco Logistics and Kenco Logistics agreed to be compliant with Public Policy, as it relates to the codified laws of the land, just as it would with any employee.

**ANSWER**:    Defendants admit that Mars, Inc. expected compliance with all applicable laws. Defendants lack sufficient knowledge and information to form a belief regarding the truth of the remaining allegations contained in Paragraph No. 46 and therefore deny the same.

47.    Specifically, Mars, Inc. provided Kenco Logistics with company policies, procedures, manuals and the like, just as it would with any employee. In addition, Mars, Inc. provided the necessary tools to perform the assigned job functions, such as but not limited to:

Leasing the facility, the equipment (warehouse and office), the computers, the software, as well as, the maintenance, upkeep and repairs of such, just as it would for any employee.

**ANSWER**:    Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 47, as Defendants have no knowledge regarding what Mars, Inc. provided to its employees, and therefore deny the same.

48.    Specifically, Mars, Inc. provided to Kenco Logistics, just as it had its fowler *[sic]* management company on a regular and ongoing basis, a comprehensive standard to safeguard the Quality and Food Safety of its products in the outbound pipeline. The document was developed in conjunction with Global Quality and Food Safety Requirements.

**ANSWER**:    Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 48 and therefore deny the same.

49.    Specifically, Mars, Inc. set the performance management standards and goals for Kenco Logistics, just as it would with any employee.

**ANSWER**:    Defendants lack sufficient knowledge and information to form a belief regarding the truth of the remaining allegations contained in Paragraph No. 49 and therefore deny the same.

50.    Kenco Logistics because of its multifunctional and multilayers of management types can be coined as a "Super Manager."

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 50.

51.    Specifically, Mars, Inc. provided it's "Super Manager" Kenco Logistics with ongoing guidance, support and management continually.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 51.

15

52.     Specifically, Mars, Inc. provided this support, guidance and management to its "Super Manager" Kenco logistics and the Mars Manteno Facility, by way of an in-house Regional Distribution Manager (RDM).

**ANSWER**:     Defendants deny the allegations contained in Paragraph No. 52.

53.     Kenco Logistics, it's "Super Manager" just as any employee would, on an ongoing regular and regimented basis conferred with, Mars, Inc. for directives and goals, while conforming to these directives, and reporting the results of such to Mars, Inc.

**ANSWER**:     Defendants deny the allegation that Kenco was a "Super Manager" for Mars, Inc. Defendants lack sufficient knowledge and information to form a belief regarding the truth of the remaining allegations contained in Paragraph No. 53 and therefore deny the same.

54.     Just as any manager would, Kenco Logistics a type of "Super Manager" dovetailed their management styles to synergize the mandates of it employer, Mars, Inc. and public policy to meet the performance management goals set by Mars, Inc.

**ANSWER**:     Defendants deny the allegations contained in Paragraph No. 54.

55.     Pointedly, Public policy drives industry standards that drive company policy. Specifically, in this case the Food, Drug and Cosmetic Act (FD&C Act), Food Safety and Modernization Act (FSMA, the 2001 Bioterrorism Act and other Acts, as well as, The World Health Organization (WHO), Codex Alimentarius, FAO and other organizations, shape and form the various recognized Global Food Safety Initiative (GFSI) benchmarks; which include but are not limited to: FSSC 2200, IS02200, BRC, IFS, SQF and other food safety standards.

**ANSWER**:     Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 55 and therefore deny the same.

16

56.    Specifically, Kenco Logistics was assigned the task of implementing a written Quality Management System based upon the current non-documented procedures and protocols being performed at the Mars Manteno facility. This standard was based upon ISO, the International Standard of Organization.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 56.

57.    Kenco Logistics Quality Management System is based on an ISO, the International Standard of Organization; the specific ISO standard is 9001:2008.

**ANSWER**:    Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 57 and therefore deny the same.

58.    Specifically, Kenco Logistics implemented a written Quality Management System at the Mars Manteno Facility.

**ANSWER**:    Defendants admit the allegations contained in Paragraph No. 58.

59.    Mars, Inc. and Kenco Logistics are both certified to some Global Food Safety Initiative standard and or benchmark.

**ANSWER**:    Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegation that Mars, Inc. was certified to some Global Food Safety Initiative standard and/or benchmark.  Defendants deny the remaining allegations contained in Paragraph No. 59.

60.    Pointedly, yearly external audits are required to remain compliant to the Quality Management System, along with internal audits.

**ANSWER**:    Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 57 and therefore deny the same.

17

61.     Furthermore, the Federal Government under the 2001 Bioterrorism Act and the 2011 Food Safety Modernization Act, require all august body participants along the food supply chain to be complaint; Essentially from farm to fork.

**ANSWER**:    Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 61 and therefore deny the same.

62.     Kenco Logistics publicly purports to "ensure all requirements are documented according to the ISO-9001:2008 structure and are incorporated into the sites' standard operating procedures. Through regular internal audits and program development, Kenco's quality team provides support and industry expertise in FDA, OSHA, EPA, DEA, DOT, and numerous other compliance agencies."

**ANSWER**:    Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 62 and therefore deny the same.

63.     Specifically, the system implemented at the Mars Manteno facility was to be a standardization of all policies, procedures, mandates and the like. This included, but was not limited to job analysis, job descriptions and the corresponding operating procedures for each job. These and all-encompassing documents are authored and vetted.

**ANSWER**:    Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 63 and therefore deny the same.

64.     Pointedly, all Quality Management systems, including but not limited to this Mars Manteno Quality Management System, mandate that all documents are to be catalogued, controlled, maintained, and stored amongst other requirements.

**ANSWER**:    Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 64 and therefore deny the same.

65.    Pointedly, Kenco Logistics developed an Appendix A for the Mars Manteno Facility that catalogued the corresponding standardized documents for the Mars Manteno Facility. This included but was not limited to Job descriptions, Standard Operating Procedures, policies, and forms.

**ANSWER**:    Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 65 and therefore deny the same.

66.    Pointedly, Kenco Logistics also maintained an Appendix F, a higher matrix of Appendix A, top tier documents, that catalogued the corresponding standardized documents for the Kenco Logistics as a whole, inclusive of the Manteno Facility, as well as, other managed facilities. This included but was not limited to Job functions by titles, Standard Operating Procedures, policies, forms and the like.

**ANSWER**:    Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 66 and therefore deny the same.

67.    Pointedly the documents itemized in Appendix A for the site super ruled those documents in Appendix F because they were customized to the specific employer's and site requirements.

**ANSWER**:    Defendants lack sufficient knowledge and information to form a belief regarding the truth of the remaining allegations contained in Paragraph No. 67 and therefore deny the same.

19

68.    To ensure proper dissemination and training, each policy and or procedure are to be signed off by each employee and a record retained of such.

**ANSWER**:    Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 68 and therefore deny the same.

69.    Pointedly, no deviation from any policy and procedure is to occur, without following the procedure of the exception procedure and an approval of such on any level.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 69.

70.    President, David Caines, of the Kenco Group referred to the employees of the Mars Manteno site specifically as Mars, Inc. employees.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 70.

71.    The "Super Manager's" role was to manage and enforce the directives and mandates of Mars, Inc. at the Mars Manteno facility that was owned, leased and operated by Mars, Inc. since the Mars, Inc. Manteno inception in 1999.

**ANSWER**:    Defendants deny the allegation that it was a "Super Manager" for Mars, Inc. Defendants lack sufficient knowledge and information to form a belief regarding the truth of the remaining allegations contained in Paragraph No. 71 and therefore deny the same.

72.    The means test for an employee is below based upon the Common-law test, the Economic realities test, and the Hybrid test and the results.

**ANSWER**:    Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 72 and therefore deny the same.

73.     Title VII provides that it is "an unlawful employment practice for an employer to fail or refuse to hire or discharge any person or otherwise ... to discriminate against any individual with respect to [his or her] compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, age or natural origin."

**ANSWER**:     Defendants admit that Title VII provides, in part, that "[i]t shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges or employment because such individual's race, color, religion, sex, or national origin…"

74.     Title VII is at bottom an enterprise liability scheme. It is structured to hold employing entities—not individuals—accountable for discrimination within the organization.

**ANSWER**:     Defendants lack sufficient knowledge and information to form a belief as to the truth of the allegations contained in Paragraph No. 74 and therefore deny the same.

75.     The Mars-Manteno facility, since its inception in 1999, has been a fully functional facility comprised of a General Manager, Operations Manager, Accounting and Human Resource Department, supervisors, and workers.

**ANSWER**:     Defendants lack sufficient knowledge and information to form a belief as to the truth of the allegations contained in Paragraph No. 75 and therefore deny the same.

76.     Kenco, Mars, Inc., "Super Manager" provided back office support to the accounting and human resource department, as well as, the implantation *[sic]* of Kenco management styles, including but not limited to: Kenco Quality Management System (KQMS), an ISO 9001:2008 based system, Operational Excellence and Continuous Improvement based upon Lean and Six Sigma principles.

**ANSWER**:     Defendants lack sufficient knowledge and information to form a belief as to the truth of the allegations contained in Paragraph No. 76 and therefore deny the same.

21

77.    The specific back office support provided by Kenco entailed pass on the invoices/bills of the Mars Manteno facility to Mars, Inc. after they were receipted, reconciled and the like the Mars Manteno Facility Accounting Department. In addition to the invoice pass thru to Mars, Inc., Kenco also passed thru the Mars Manteno payroll by issuing the payroll checks, after the payroll had been processed, verified and submitted by the Mars Manteno Accounting Department for the five (5) different payrolls that comprised the Mars Manteno Facility to Keno's payroll department.

**ANSWER**:    Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 77 and therefore deny the same.

78.    The additional specific back office support provided by Kenco was the recruitment and hiring of salaried personnel for the Mars Manteno facility, as well as, other Human Resource support, such as but not limited to: training, benefit administration, and the like.

**ANSWER**:    Defendants deny that Kenco provided back office support to Mars, Inc.  Defendants admit the remaining allegations contained in Paragraph No. 78, including the allegations that Kenco recruited and hired personnel to work at the Mars Manteno facility and that Kenco provided human resources support, including training and benefit administration to its employees.

79.    The KQMS style was to standardize the facility to bring compliance to 21CFR110, Food Safety and Modernization Act, 2002 Bioterrorism Act, as well as, any other applicable Global Food Safety Initiative (GFSI) benchmarked schemes; in addition to, streamlining business process, increase efficiency, profitability and accountability.

**ANSWER**:    Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 79 and therefore deny the same.

80.     The claims of disparate and disparate treatment and impact were reported to the site Human Resource Personnel, Kelvin Walsh-General Manager, Mike Manzello Operations Manager, Mario Lopez-General Manager Tammi Fowler, Dan Dey, Paula Hise and other corporate persons, by email, phone, fax, and in-person on numerous occasions.

**ANSWER**:     Defendants admit that Plaintiff reported complaints to various Kenco employees on more than one occasion.   Defendant further admits that Plaintiff reported complaints by email, fax and in person.  Defendants deny the remaining allegations contained in Paragraph No. 80.

81.     Specifically these claims were made in December 2013-Novemebr *[sic]* 2014.

**ANSWER**:  Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 81 and therefore deny the same.

82.     At all times, Kelvin Walsh, ("Walsh"), a White, American male, held the position of General Manager. Walsh was in a position of authority to undertake tangible employment decisions and/or control the terms and conditions of DOSS's employment with Defendant KENCO.

**ANSWER**:     Defendants deny the allegation that "[a]t all times," Kelvin Walsh held the position of General Manager.  Defendants admit the remaining allegations contained in Paragraph No. 82.

83.     At all relevant times, Walsh, acting on behalf of Kenco the managing agent for Mars, Inc. directed and approved all operational activities, including but not limited to: hiring, pay, scheduling, performance management, workflow and the like.

**ANSWER**:     Defendants admit that Walsh directed operational activities during his employment with Kenco, including hiring, pay, scheduling, performance and workflow. Defendants deny the remaining allegations contained in Paragraph No. 83.

84.     At all times relevant, Mike Manzello, ("Manzello"), a White male, held the position of Operations Manager, reporting to Walsh. Manzello was in a position of authority to undertake or recommend tangible employment decisions and/or control the terms and conditions of DOSS's employment with KENCO.

**ANSWER**:     Defendant deny the allegation that "[a]t all times," Mike Manzello held the position of Operations Manager and reported to Walsh.  Defendants admit the remaining allegations contained in Paragraph No. 84.

85.     At all relevant times, Manzello managed operational activities relative to the receipt and distribution of inventory for Mars, Inc., including but not limited to: hiring, scheduling, workflow and the like.

**ANSWER**:     Defendants admit that Manzello managed operational activities relative to the receipt and distribution of inventory for Mars, Inc., including hiring, scheduling and workflow.  Defendants deny the remaining allegations contained in Paragraph No. 85.

86.     At all times relevant, Valerie Lillie, ("Lillie"), a White female, held the position of Quality Coordinator, reporting to Walsh. Lillie was in a position of authority to undertake or recommend tangible employment decisions and/or control the terms and conditions of DOSS's employment with KENCO.

**ANSWER**:     Defendants deny the allegation that "[a]t all times," Valerie Lilley held the position of Quality Coordinator and reported to Walsh.  Defendants admit the remaining allegations contained in Paragraph No. 86.

87.     At all relevant times, Lillie coordinated/managed all quality activities relative to the operation and maintenance of the facility, the receipt and distribution of inventory for Mars, Inc., quality matrixes and plans, pest control, standard operating procedures, sanitation and safety,

as well as Mars, Inc., requirements and other industry specific regulatory mandates and guidelines such as but not limited to: FDA and OSHA.

**ANSWER**:    Defendants admit that Lilley coordinated/managed quality activities relative to the operation and maintenance of the facility, the receipt and distribution of inventory for Mars, Inc., quality matrixes and plans, pest control, standard operating procedures, sanitation and safety, as well as certain requirements by Mars, Inc. and other industry specific regulatory mandates and guidelines such as the FDA and OSHA.  Defendants deny the remaining allegations contained in Paragraph No. 87.

88.    In early December 2013, Lillie began making jokes and innuendos about her perception of DOSS's sexual orientation in a group of persons.

**ANSWER**:    Defendant Lilley denies the allegations contained in Paragraph No. 88.  The remaining Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 88 and therefore deny the same.

89.    DOSS expressed his opposition to Lillie's remarks by stating that "he does not swing that way and that wasn't cool."

**ANSWER**:    Defendant Lilley denies the allegations contained in Paragraph No. 89. The remaining Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 89 and therefore deny the same.

90.    KENCO's Human Resources Administrator, Edith McCurry was present on one such occasion when the comment was made by Lillie whom also heard and observed DOSS's opposition to the offensive remarks.

**ANSWER**:    Defendant Lilley denies the allegations contained in Paragraph No. 90. The remaining Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 79 and therefore deny the same.

91.    DOSS was promoted from a Warehouse Associate to a Shift Lead on or about December 9, 2013.

**ANSWER**:    Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 91 and therefore deny the same.

92.    Immediately upon DOSS's promotion, he was harassed and subjected to unequal terms and conditions of employment than other Shift Leads, when Walsh failed to pay him the prevailing wage of a Shift Lead upon promotion.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 92.

93.    DOSS questioned Walsh about the pay disparity and Walsh informed him that do *[sic]* to budgetary reasons, defendant KENCO was not able to give him the prevailing wage, but would administer prorated increases in pay over a period of time.

**ANSWER**:    Defendant denies the allegations contained in Paragraph No. 93.

94.    On or about December 16, 2013, unbeknownst to DOSS, KENCO through Tammi Fowler, its then Corporate HR Director approved and endorsed such actions of Walsh to prorate plaintiff's wages.

**ANSWER**:    Defendants Walsh and Fowler admit that Tammi Fowler approved Walsh's actions in temporarily adjusting Plaintiff's wage scale. Defendants Walsh and Fowler deny the remaining allegations contained in Paragraph No. 94. The remaining Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 94 and therefore deny the same.

95.    In late February 2014, DOSS was initially asked by Manzello to go for external training for the implementation of a new warehouse management system called "Red Prairie."

**ANSWER**:    Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 95 and therefore deny the same.

96.    In the beginning of March 2014, DOSS complained to Walsh, Manzello, and the Manteno site Human Resource personnel that he was being subjected to unequal terms and conditions of employment by not being paid the prevailing rate of a Shift Lead, as similarly situated, non-black and female Shift Leads.

**ANSWER**:    Defendant Walsh denies the allegations contained in Paragraph No. 96.  The remaining Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 96 and therefore deny the same.

97.    Shortly after having complained to Walsh, Manzello and the Manteno site Human Resources personnel of having been subjected to such unequal terms and condition of employment, DOSS was told by Manzello that he was not going for the external training on the new warehouse management system. No reason was articulated for not giving plaintiff the training on the new system.

**ANSWER**:    Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 97 and therefore deny the same.

98.    DOSS was effectively denied training for the mandated system upgrade in March of 2014.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 98.

99.    DOSS complained to Walsh, Manzello and the Manteno Human Resource personnel about the lack of training, along with the other disparities that he had been subjected to.

**ANSWER**:    Defendant Walsh denies the allegations contained in Paragraph No. 99. The remaining Defendants lack sufficient knowledge and information to form a belief

regarding the truth of the allegations contained in Paragraph No. 99 and therefore deny the same.

100.    KENCO sent all the non-black leads for external training on the Red Prairie warehouse management system in March of 2014.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 100.

101.    Immediately after DOSS complained of not being trained for the Red Prairie warehouse management system, he began being subjected to continued harassment by Walsh, Manzello and Valerie Lillie.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 101.

102.    At all relevant times, Kelvin Walsh, Mike Manzello and Valerie Lillie were acting as agents, servants and/or employees of Defendant KENCO. Defendant KENCO is liable for the acts and omissions of these individuals pursuant to the principals of ratification, respondeat superior and actual and/or implied agency.

**ANSWER:**    Defendants admit that Kelvin Walsh, Mike Manzello and Valerie Lilley were all employees of Kenco, but deny that they were employed by Kenco "at all relevant times." The remaining allegations contained in Paragraph No. 102 constitute legal conclusions to which no answer is required.  To the extent that an answer is required, Defendants deny the remaining allegations contained in Paragraph No. 102. Throughout DOSS's employment tenure, under KENCO, he was routinely and unjustifiably harassed and humiliated by Kelvin Walsh, Mike Manzello and Valerie Lillie. This harassment included conduct related to DOSS's job performance; a reduction in his rate of pay; an accusation that he smelled like marijuana, the outward expression that he was perceived as being a homosexual and being compared to a "gay"

character, "Ray Holt" on a television series, "Brooklyn Nine Nine", as well as, being punished by the altering and reduction of his hours worked; limiting DOSS's access to overtime ("OT") and requiring him to use his paid time off ("PTO") to comprise a 40 hour work week. Upon information and belief, similarly situated, white, non-black and non African-American co-workers of DOSS were not subjected to such treatment.

**ANSWER**:    Defendants deny the allegations contained in Paragraph 102.

103.    DOSS objected to and began reporting such disparate treatment on or about December, 2013 reporting such conduct to the Defendant's Manteno onsite Human Resources personnel.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 103.

104.    DOSS's shift was routinely cancelled by Walsh beginning in April of 2014 for the stated reason that "DOSS was not capable of running an effective shift." However, similarly situated, non-black, non-African-American workers with less experience, including newly hired employees were afforded the opportunity to run their shifts. Upon information and belief, their shifts were never cancelled.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 104.

105.    Walsh made disparaging remarks concerning DOSS's work performance publicly--these statements directed toward Plaintiff were misleading and inaccurate.

**ANSWER**:    Defendant Walsh denies the allegations contained in Paragraph No. 105. The remaining Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 105 and therefore deny the same.

106.    DOSS was denied training in late April of 2014 when he was excluded from the internal training for the Red Prairie warehouse management system, as well as, being assigned tasks that would further exclude and segregate him from the training.

**ANSWER**:    Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 106 and therefore deny the same.

107.    On or about May 2, 2014, Lillie continued to make additional unwanted comments again concerning DOSS's sexual orientation. This prompted other co-workers to engage in a conversation about plaintiff in which they equated DOSS to "Ray Holt," a gay character played by Andre Braugher of the television series, "Brooklyn Nine Nine."

**ANSWER**:    Defendant Lilley denies the allegations contained in Paragraph No. 107. The remaining Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 107 and therefore deny the same.

108.    DOSS again protested such actions directed toward him and reported it to the Defendant's onsite Human Resources personnel.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 108.

109.    After DOSS began questioning, complaining and reporting the matters to onsite HR, his shifts began to become routinely cancelled, for the stated reason that "[plaintiff] was not able to adequately run his shift." In addition, DOSS continued to be the victim of unequal terms and condition of employment in that he was subjected to a disparity in his rate of pay relative to similarly situated white, non-black, non-African American co-workers.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 109.

110.    DOSS was further subjected to other forms of disparate treatment and harassment in that on or about May 5, 2014, he was forced to take a "drug and alcohol" test by Mike Manzello and Valerie Lillie in retaliation for engaging in protected activity and opposing such treatment by Walsh, Mike Manzello and Valerie Lillie.

**ANSWER**:    Defendants Walsh and Lilley admit that Doss was requested to submit to a drug test on May 5, 2014. Defendants Walsh and Lilley deny the remaining allegations contained in Paragraph No. 110. The remaining Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 110 and therefore deny the same.

111.    DOSS was intimidated, coerced and threatened with termination into taking a drug test on his day off pursuant to Defendant KENCO' s "reasonable suspension" policy.

**ANSWER**:    Defendants Walsh and Lilley admit that Doss was asked to take a reasonable suspicion drug test and was told that a refusal to submit to the drug test would result in the termination of his employment. Defendants Walsh and Lilley deny the remaining allegations contained in Paragraph No. 111. The remaining Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 111 and therefore deny the same.

112.    DOSS was forced to swipe in on the clock and was given a work order for a drug and alcohol testing that stated that he had a work time accident necessitating the testing.

**ANSWER**:    Defendants Walsh and Lilley admit that Doss was clocked in at the time he submitted to the drug test. Defendants Walsh and Lilley deny the remaining allegations contained in Paragraph No. 112. The remaining Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 112 and therefore deny the same.

113.    DOSS was required by Defendant KENCO to go to, Provena, a drug and alcohol testing facility in Bourbonnais, Illinois under escort. Upon information and belief, similarly situated non-black, non-African American co-workers of plaintiff were not treated in such a manner.

**ANSWER**:    Defendants Walsh and Lilley admit that Doss was required by Kenco to go to Provena, a drug and alcohol testing facility in Bourbonnais, Illinois under escort. Defendants Walsh and Lilley deny the remaining allegations contained in Paragraph No. 113. The remaining Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 113 and therefore deny the same.

114.    DOSS was accused of being hostile, angry and aggressive because he opposed being forced to take the drug test under the circumstances of being coerced and intimated into doing so under the threat and duress of being discharged on his off day.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 114.

115.    Defendant KENCO's policies and procedures do not have a provision for the actions that were imposed upon DOSS.

**ANSWER**:    The phrase "the actions that were imposed upon DOSS" is vague, ambiguous, and subject to multiple interpretations.  Subject to and without waiving said objections, Defendants deny the allegations contained in Paragraph No. 115.

116.    Upon information and belief, Defendant KENCO allowed similarly-situated, non-black, non-African American co-workers of DOSS to take drug tests subsequent days later after being mandated to do so.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 116.

117.    Defendant KENCO alleged and proffered to Illinois Department of Human Rights and EEOC that DOSS manipulated the drug and alcohol test results.

**ANSWER**:    Defendants deny the allegations in Paragraph 117.

118.    Defendant proffered to Illinois Department of Human Rights and EEOC on or about July 14, 2014 that it was waiting for a "Redo" on the statement of account from its witness Shaun.

32

**ANSWER**:    Defendants deny the allegations in Paragraph 118.

119.    Pointedly, upon information and belief, Defendant had the witnesses to "redo" his statement to support the actions of Defendant.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 119.

120.    Defendant continued to subjugate Doss to intentional and willful interference, as well as, intentional infliction of emotional stress and duress, as well as, once again breaching its fiduciary obligation to Doss.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 120.

121.    Moreover, Defendant conspired against Doss when it required Shaun, a Mars Manteno employee to "redo" his statement.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 121.

122.    Furthermore, Defendant obstructed justice when it materially altered a statement of fact.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 122.

123.    Plaintiff also alleges and believes that Defendant committed obstruction by deception.

**ANSWER**:    Defendants lack sufficient knowledge and information to form a belief as to the truth of the allegations regarding what Plaintiff believed. Defendants deny the remaining allegations contained in Paragraph No. 123, including the allegation that Defendants committed obstruction by deception.

124.    Plaintiff also alleges and believes that Defendant committed obstruction by destruction of evidence.

33

**ANSWER**:   Defendants lack sufficient knowledge and information to form a belief as to the truth of the allegations regarding what Plaintiff believed. Defendants deny the remaining allegations contained in Paragraph No. 124, including the allegation that Defendants committed obstruction by destruction of evidence.

125.   Walsh, Manzello, and Lillie, the GM, the Operation Manager, and the Quality Coordinator used this incident to further isolate and treat DOSS differently based upon his race and his perceived sexual orientation (homosexual).

**ANSWER**:   Defendants deny the allegations contained in Paragraph No. 125.

126.   DOSS and other African Americans were subjected to harsher discipline and closer scrutiny than his similarly situated, white, non-black, non-African American co-workers.

**ANSWER**:   Defendants deny the allegations contained in Paragraph No. 126.

127.   DOSS and other African Americans have been subjected to public humiliation, harassment, retaliation, and retribution when questioning or complaining about the unfair discriminatory treatment and practices of Defendant KENCO while his white, non-black, non-African-American counterparts were not subjected to such treatment.

**ANSWER**:   Defendants deny the allegations contained in Paragraph No. 127.

128.   Walsh, Defendant KENCO' s then General Manager at the Manteno facility, and in turn KENCO, became more openly hostile, retaliatory and discriminatory towards DOSS as well as other black and African American employees encouraging supervisors, leads and other non-black, non-African workers under their management to do likewise. This included but was not limited to all phases of employment, i.e.: hiring, discharge, performance management, conditions of employment, promotion, paid time off, furlough/leave of absences, discipline, work shifts, benefits, and wages.

34

**ANSWER**:    Defendants admit that Kelvin Walsh is the former Kenco General Manager for the Manteno, Illinois facility.  Defendants deny the remaining allegations contained in Paragraph No. 128.

129.    DOSS's cancelled shifts, use of PTO and the reduction his work hours caused him a loss of income.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 129.

130.    Defendant KENCO sought every opportunity to treat DOSS unfairly in relation to his similarly situated, white, non-black, non-African American coworkers and to diminish his authority and expertise.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 130.

131.    On or about May 5, 2014, DOSS took action against the hostile and discriminatory treatment that was being directed toward him by Defendant KENCO. DOSS contacted the Manteno onsite Human Resources personnel complaining about the hostile, discriminatory; disparate treatment and requested that his situation be documented; forwarded to Walsh and placed in his employment file.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 131.

132.    Plaintiff is informed and believes, and on that basis alleges that, at all times relevant to this action, Plaintiff and Defendants had a fiduciary relationship upon which Plaintiff justifiably relied to his detriment.

**ANSWER**:    Defendants lack sufficient knowledge and information to form a belief as to the truth of the allegations regarding what Plaintiff believed.  Defendants deny the remaining allegations contained in Paragraph No. 132.

133.    By virtue of the relationship between Plaintiff and Defendants, a fiduciary duty existed.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 133.


134.    Plaintiff believes that Defendant breached its fiduciary obligation to Doss.

**ANSWER**:    Defendants lack sufficient knowledge and information to form a belief as to the truth of the allegations regarding what Plaintiff believed.  Defendants deny the remaining allegations contained in Paragraph No. 134, including the allegation that Kenco owed a fiduciary obligation to Doss.


135.    Pursuant to said duty, Defendants owed the utmost good faith and fairness to Plaintiff in all matters pertaining to Defendant's conduct with respect to Plaintiff s' employment and all the terms and conditions imposed upon Plaintiff.  Including, but not limited to: equal terms and conditions of employment, as it related to progressive disciplinary actions, investigations and the like, as well as, the compliance to public policies.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 135.


136.    Plaintiff believes that Defendant intentionally and wilfully breached and violated public policy, as it relates to being free from a hostile and racially animus work environment, being subjugated to unequal terms and conditions of employment, as well as, disparate and disparaging treatment and impact.

**ANSWER**:    Defendants lack sufficient knowledge and information to form a belief as to the truth of the allegations regarding what Plaintiff believed.  Defendants deny the remaining allegations contained in Paragraph No. 136.


137.    Defendant also raped Doss's personnel file of Doss' internal written complaints, relevant documents, such as but not limited to Doss' May 5, 2014 position statement, May 12, 2014 complaint to the Employee Assistance line, Doss' May- June 2014 inquiries and complaints

about his shift, PTO and other incidents, Doss' July 2014 email regarding being threatened, Doss'

August 2014 correspondence regarding Doss' allege insubordination, as well as, incident

investigation notes, commendations, and other documents relative to Doss's employment that were

mandated by company policy to be kept as a matter of ordinary business record keeping practices.

**ANSWER**:     Defendants deny the allegations contained in Paragraph No. 137.


138.     Plaintiff believes that Defendant raped his personnel file as another breach of its

fiduciary duty to Plaintiff as it relates to their employment relationship.

**ANSWER**:     Defendants lack sufficient knowledge and information to form a belief as to the
truth of the allegations regarding what Plaintiff believed.  Defendants deny the
remaining allegations contained in Paragraph No. 138, including the allegation that
Kenco owed a fiduciary duty to Plaintiff.


139.     In another breach of fiduciary duty Plaintiff believes that Defendant refused to cure

the deficiencies in Plaintiff's file to further its contrived schemes.

**ANSWER**:     Defendants lack sufficient knowledge and information to form a belief as to the
truth of the allegations regarding what Plaintiff believed.  Defendants deny the
remaining allegations contained in Paragraph No. 139, including the allegation that
Kenco owed a fiduciary duty to Plaintiff.


140.     Upon information and belief, some of DOSS's similarly situated white, male co-

workers whom tested positive for drugs multiple times were not disciplined, suspended or

terminated.

**ANSWER**:     Defendants deny the allegations contained in Paragraph No. 140.


141.     Upon information and belief, DOSS's alteration and reduction in shift and hours

was against the normal practices of the Defendant KENCO with respect to such alleged

discrepancies and as such, violated Defendants normal due process afforded to affected parties.

Defendant's KENCO punitive actions directed toward DOSS was motivated by a racial animus, discrimination and retaliation, and was unjustified and violative of his rights under Federal and the state of Illinois anti-discrimination laws.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 141.

142.    Upon information and belief, DOSS's similarly situated, white, non-black, non-African American co-workers were not subjected to humiliation, harassed, and punished in such a manner. Additionally, upon information and belief, Plaintiff was the only staff in his Department affected by the humiliation, harassment and punitive measures directed toward him. None of DOSS's similarly situated, white, non-black, non-African American co-workers were humiliated, harassed and subjected to such punitive measures.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 142.

143.    Defendant KENCO's policies dictate that when such infractions and discrepancies occur within the facility, proper company protocol and procedure is to be followed as it relates to the Standard Operating Procedure.

1.    Defendant again breached its fiduciary obligation to Doss by intentionally and willfully failing to investigate the internal complaint.

2.    Defendant knew that it had failed to follow its own policies and procedures, as well as, public policy.

3.    Defendant knew that it was wantonly, intentionally and willfully creating an animus and hostile work environment.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 143, including the allegations contained in subparagraphs (1) through (3), inclusive.

144.     On or about the week of May 12, 2014, Noah Richcreek, a white, non-black, non-African American, male was promoted to a Shift Lead. Richcreek was not subjected to such discriminatory, unequal terms and conditions of his employment as was DOSS.

**ANSWER**:     Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 144 and therefore deny the same.

145.     Defendant KENCO also hired external candidates for the Shift Lead position. These similarly situated, non-black, non-African American co-workers of DOSS were John Spell, Kyle Rose, and Stephanie Dumas whom were hired during the period of the fall of 2013 to March, 2014. None of these persons were subjected to such discriminatory, unequal terms and conditions of their employment as was DOSS.

**ANSWER**:     Defendants deny that Doss was subjected to discriminatory, unequal terms and conditions of his employment. Defendants lack sufficient knowledge and information to form a belief regarding the truth of the remaining allegations contained in Paragraph No. 145 and therefore deny the same.

146.     Defendant KENCO's Shift Lead, Stephanie Dumas failed to meet Defendant's minimum qualifications as a Shift Lead inasmuch as she was not certified to operate a forklift, but was hired as such; was paid the prevailing rate of a Shift Lead in March of 2014 and was given first shift Monday-Friday.

**ANSWER**:     Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 146 and therefore deny the same.

147.     Defendant KENCO's newly hired and or promoted, non-black, non-African American Shift Leads received prevailing pay and more favorable assignments and shifts than DOSS and other similarly situated African Americans.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 147.

148.    Defendant again breached its fiduciary obligation to Doss by intentionally and willfully failing to pay DOSS the prevailing rate of pay and administer its rules, policies, procedures, protocols and the like equitably.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 148.

149.    Defendant knew it hired Stephanie Dumas against and in violation of its own policies and requirements.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 149.

150.    Defendant knew that Stephanie Dumas failed to meet the minimum requirements as Lead Associate.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 150.

151.    Defendant knew it had retaliated against Doss by subjecting him to unequal terms and conditions of employment.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 151.

152.    Defendant KENCO's then General Manager, Walsh told new hire Kyle Rose in Plaintiff's presence that DOSS needed to be watched.

**ANSWER**:    Defendant Walsh denies the allegations contained in Paragraph No. 152.  The remaining Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 152 and therefore deny the same.

153.    On or about May 10, 2014, DOSS's 2.3 shift was indefinitely cancelled by Walsh.

40

**ANSWER**:    Defendant Walsh admits that the 2.3 shift was eliminated by Walsh because there were not sufficient employees available to staff the shift.  Defendant Walsh denies the remaining allegations contained in Paragraph No. 153.   The remaining Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 153 and therefore deny the same.

154.    Pointedly, Defendant stated to the IDHR and EEOC in its July 14, 2014 positon statement in one paragraph that the volume of work was low; thereby legitimately constituting the cancelling of the shift.

**ANSWER**:    Defendants deny the allegations in Paragraph 154.

155.    Pointedly, in another paragraph Defendant stated to the IDHR and EEOC in its July 14, 2014 positon statement in that Saturday was a mandated work day; which required Doss to be sent home and return again at 3:00 pm.

**ANSWER**:    Defendants deny the allegations in Paragraph 155.

156.    Pointedly, the return time was the same time that Doss' shift had allegedly been indefinitely cancelled.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 156.

157.    Upon information and belief, overtime was mandatory; therefore:

**ANSWER**:    Defendants admit that its employees were periodically expected to work overtime as necessary due to business needs.  Defendants deny the remaining allegations contained in Paragraph No. 157.

158.    a. Un-justifying the legitimate business need to cancel Doss' shift.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 158.

158. *[sic]*    Upon information and belief, Doss' shift was covered in overtime from the immediately preceding and proceeding shifts.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 158.

159.    Pointedly, the Mars Manteno Facility ran a twenty-four (24) hour seven (7) day a week operation.

**ANSWER**:    Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 159 and therefore deny the same.

160.    Pointedly, no other shift was reconfigured but Doss's.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 160.

161.    Upon information and belief, no other shift immediately preceding and proceeding Doss' shift was altered.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 161.

162.    This shift reconfiguration was intentional, willful and wanton, as to interfere with Doss' employment relationship with Kenco and Mars, as well as, cause Doss intentional infliction of emotional distress, destabilization, and financial hardship.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 162.

163.    Pete Monstwillo, a white male, assigned to DOSS's shift was reassigned to another shift that guaranteed him 40 hours plus overtime.

**ANSWER**:    Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 163 and therefore deny the same.

164.    DOSS was not reassigned to another shift.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 164.


165.    On or about May 12 and 13, 2014, DOSS reported the incidents to the Employee Assistance hotline by email, fax and telephone, as well as to the Manteno onsite Human Resources personnel.

**ANSWER**:    Defendants object to the term "incidents" as vague and ambiguous.  Subject to and without waiving said objections, Defendants lack sufficient knowledge and information to form a belief regarding the truth of the remaining allegations contained in Paragraph No. 165 and therefore deny the same.


166.    Defendant KENCO's Vice President of Operations, Paula Hise called DOSS to follow up on the reported incidents on or about May 14, 2014.

**ANSWER**:    Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 166 and therefore deny the same.


167.    On or about May 14, 2014, Walsh began to openly ignore and ostracize DOSS. In addition, Walsh would routinely call DOSS into work but would then send him home before the end of Plaintiff's shift.

**ANSWER**:    Defendant Walsh denies the allegations contained in Paragraph No. 167. The remaining Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 167 and therefore deny the same.


168.    Such pervasive and blatant discriminatory, hostile and disparate treatment by Defendant KENCO, gave rise to a rash of harassment from other employees and subordinates.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 168.

169.    On or about July 2, 2014 I was verbally harassed by Pete Monstwillo because I instructed him to perform a task that was a business necessity.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 169.

170.    On or about July 14, 2014, Plaintiff was harassed and threatened by Karl Meyer because Plaintiff observed and reported a safety violation.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 170.

171.    Pointedly, in Defendant's position statement dated December 19, 2014 regarding charges 2015CF0822 and 21BA50009 states:

**ANSWER**:    Defendants admit that Kenco submitted a position statement in response to Charge No. 2015CF0822/21BA50009 on December 19, 2014.  Defendants deny the remaining allegations contained in Paragraph No. 171.

172.    "As a Lead Associate, Mr. Doss is responsible, in part, for ensuring that Warehouse Associates comply with safety protocol."

**ANSWER**:    Defendants admit the allegations contained in Paragraph No. 172.

172.[sic]On or about July 15, 2014, DOSS reported the hostile, harassing and discriminatory treatment that was being directed toward him by Defendant's, employees. DOSS contacted the Manteno onsite Human Resources personnel complaining about the hostile, discriminatory; disparate treatment and requested that his situation be documented in addition to reporting this treatment to the then acting GM, David Jabaley.

**ANSWER**:    Defendants deny that Kenco had onsite Human Resources personnel at the Manteno, Illinois facility.  Defendants lacks sufficient knowledge and information to form a belief regarding the truth of the remaining allegations contained in Paragraph No. 172 and therefore deny the same.

173.    David Jabaley refused to take action on this complaint; until Doss could produce a witness to attest to what had occurred. Company policy does not warrant this type of practice or action.

**ANSWER**:    Defendant Jabaley denies the allegations contained in Paragraph No. 173. The remaining Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 173 and therefore deny the same.

174.    Defendant again breached its fiduciary obligation to Doss by maliciously, intentionally and willfully failing to investigate a complaint of threat of an assault on Doss from Meyer.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 174.

175.    Defendant again breached its fiduciary obligation to company and public policy by maliciously, intentionally and willfully failing to investigate a complaint of threat of an assault on Doss from Meyer.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 175.

176.    Defendant again breached its fiduciary obligation by obstructing and impeding justice and the protection of Doss' protected rights by maliciously, intentionally and willfully failing to investigate a complaint of threat of an assault on Doss from Meyer.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 176.

177.    Defendant knew that its actions would cause harm to Doss.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 177.

178.    Defendant knew that its actions would undermine, marginalize, and further ostracize Doss as a Lead Associate.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 178.

179.    Despite this adverse request to company policy from Jabaley, a third party bystander, Scott Marksteiner, emailed David Jabaley affirming that Doss had been threatened.

**ANSWER**:    Defendant Jabaley denies the allegations contained in Paragraph No. 179. The remaining Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 179 and therefore deny the same.

180.    Pointedly, Marksteiner indicated that Meyer had approached him and gave Marksteiner a threatening message to give to Doss, as he knew Marksteiner and Doss were friends.

**ANSWER**:    Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 180 and therefore deny the same.

181.    Defendant and its agent Jabaley willfully and intentionally continued to refuse to investigate or follow company policy and procedure.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 181.

182.    Defendant and its agent Jabaley willfully and intentionally continued to refuse to investigate or adhere to public policy.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 182.

183.    Defendant again breached its fiduciary obligation to Doss by maliciously, intentionally and willfully failing to investigate a complaint of threat of an assault on Doss from Meyer.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 183.

184.    Defendant again breached its fiduciary obligation to company and public policy by maliciously, intentionally and willfully failing to investigate a complaint of threat of an assault on Doss from Meyer.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 184.

185.    Defendant again breached its fiduciary obligation by obstructing and impeding justice and the protection of Doss' protected rights by maliciously, intentionally and willfully failing to investigate a complaint of threat of an assault on Doss from Meyer.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 185.

186.    Defendant knew that its actions would cause harm to Doss.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 186.

187.    Defendant knew that its actions would willfully, intentionally and wantonly undermine, marginalize, and further ostracize Doss as a Lead Associate.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 187.

188.    Defendant knew that its actions continued to create an animus, racially charged and hostile work environment for Doss and others.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 188.

189.    Pointedly, threats are a violation of public policy.

**ANSWER**:    Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 189 and therefore deny the same.

47

190.   On or about August 5, 2014, Doss was accused of being insubordinate to a supervisor other than his own, when he was questioned about outbound paperwork on the shift. This issue involves multiple persons.

**ANSWER**:   Defendant Jabaley admits that on or about August 5, 2014, Doss was insubordinate toward supervisor Saul Beck.  Defendant Jabaley denies the remaining allegations contained in Paragraph No. 190. The remaining Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 190 and therefore deny the same.

191.   Company policy dictates that if shift issues arise, those issues are to be addressed by the shift management.

**ANSWER**:   Defendants admit that if issues arise during a particular shift, those issues should generally be initially addressed by shift management.  Defendants deny the remaining allegations contained in Paragraph No. 191.

192.   Doss' supervisor, Scott Marksteiner, was present along with Noah Richcreek another lead associate.

**ANSWER**:   Defendants admit, upon information and belief, that Scott Marksteiner and Noah Richcreek were present.  Defendants deny the remaining allegations contained in Paragraph No. 192, including the allegation that Scott Marksteiner was Doss' supervisor.

193.   On or about August 6, 2014, the incident was reported to Mike Manzello.

**ANSWER**:   Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 193 and therefore deny the same.

194.   On or about August 7, 2014, Doss was summoned to David Jabaley's office, where Melissa Hansen the co-pack coordinator was already in the office. Jabaley reprimanded and humiliated Doss in front of Hansen stating that he had been insubordinate and that Doss was suspended; pending further investigation.

**ANSWER**:    Defendant Jabaley admits that in August 2014, David Jabaley summoned Plaintiff into his office.  Defendant Jabaley further admits that Melissa Hansen was present.  Defendant Jabaley admits that in August 2014, Doss was suspended pending further investigation as a result of his insubordination.  Defendant Jabaley lacks sufficient knowledge and information to form a belief regarding the truth of the allegations regarding the specific date Plaintiff was summoned into David Jabaley's office or was suspended pending further investigation and therefore denies the same.  Defendant Jabaley denies the remaining allegations contained in Paragraph No. 194.  The remaining Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 194 and therefore deny the same.

195.    Defendant suspended Doss on or about August 7, 2014 in retaliation for making internal and external complaints about unequal terms and conditions of employment, harassment, discrimination and the like.

**ANSWER**:    Defendant Jabaley admits that Doss was suspended in August 2014.  Defendant Jabaley lacks sufficient knowledge and information regarding the truth of the allegation regarding the specific date Plaintiff was suspended and therefore denies the same.  Defendant Jabaley denies the remaining allegations contained in Paragraph No. 195.  The remaining Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 195 and therefore deny the same.

196.    Doss recapped the occurrences that transpired relating to the alleged insubordination incident, as well as, informed Jabaley that witnesses were present who could corroborate the account.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 196.

197.    Jabaley told Doss that he was suspended pending an investigation.

**ANSWER**:    Defendant Jabaley admits the allegations contained in Paragraph No. 197. The remaining Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 197 and therefore deny the same.

198.    Doss protested and informed Jabaley that this was harassive *[sic]*, unjust and unfair treatment.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 198.

199.    Jabaley told Doss that he could submit a statement to him.

**ANSWER**:    Defendant Jabaley admits the allegations contained in Paragraph No. 199.  The remaining Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 199 and therefore deny the same.

200.    Doss came to bring the statement the next day and learned that his badge was deactivated.

**ANSWER**:    Defendants lack sufficient knowledge and information to form a belief regarding the truth of the remaining allegations contained in Paragraph No. 200 and therefore deny the same.

201.    Upon information and belief, other non-black employees who had been suspended badges were not deactivated.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 201.

202.    Upon information and belief, deactivation of a badge is relegated to a terminated employee.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 202.

203.    Doss emailed Edith McCurry the site HR Administrator about the occurrence, the current suspension and the next steps.

**ANSWER**:    Defendants deny that Edith McCurry was the site human resources administrator. Defendants lacks sufficient knowledge and information to form a belief regarding the truth of the remaining allegations contained in Paragraph No. 203 and therefore deny the same.

204.    McCurry replied and indicated that she would forward the correspondence to Jabaley and Fowler.

**ANSWER**:    Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 204 and therefore deny the same.

205.    Upon information and belief, as requested McCurry forwarded the information to Jabaley.

**ANSWER**:    Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 205 and therefore deny the same.

206.    Jabaley responded and indicated that Doss should have mailed the statement to him.

**ANSWER**:    Upon information and belief, Defendant Jabaley admits the allegations contained in Paragraph No. 206.  The remaining Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 206 and therefore deny the same.

207.    Pointedly, Jabaley was stationed out of Chattanooga and often was not at the Mars Manteno facility to receive such a mailing in a timely fashion.

**ANSWER**:    Defendant Jabaley admits that Jabaley worked out of the Chattanooga, Tennessee office.  Defendant Jabaley denies the remaining allegations contained in Paragraph No. 207.  The remaining Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 207 and therefore deny the same.

208.    Doss was suspended for over ten (10) days. During that time he was ostracized, marginalized, minimized, and ignored by Defendant's Tammi Fowler, Corporate HR, David Jabaley acting GM, and others.

**ANSWER**:    Defendant Jabaley admits that Doss was suspended.  Defendant Jabaley denies the remaining allegations contained in Paragraph No. 208. The remaining Defendants

51

lack sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 208 and therefore deny the same.

209.    Eyewitness accounts of the events were provided by DOSS' supervisor, Scott Marksteiner, and lead associate, Noah Richcreek invalidating the alleged insubordination of DOSS.

**ANSWER**:    Defendant Jabaley admits that Scott Marksteiner and Noah Richcreek, were interviewed as part of Defendant's investigation of the incident. Defendant Jabaley denies the remaining allegations contained in Paragraph No. 209. The remaining Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 209 and therefore deny the same.

210.    Upon request, Scott Marksteiner and Noah Richcreek sent written statements to McCurry the site HR Administrator and Jabaley regarding the alleged insubordination incident in support of Doss.

**ANSWER**:    Defendants deny that Edith McCurry was the site human resources administrator. Defendants deny the remaining allegations contained in Paragraph No. 210.

211.    Pointedly, Scott Marksteiner was Doss' supervisor.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 211.

212.    Specifically, Marksteiner denied that Doss was insubordinate and that any shift issues should have been directed to him, as well as, allege work performance issues with Marksteiner's shift workers.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 212.

213.    DOSS, along with those who opposed such treatment, were subjected to discriminatory treatment.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 213.

214.    Doss emailed McCurry on the sixth (6th) day of suspension to follow up on the disposition of the investigation.

**ANSWER**:    Defendants lacks sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 214 and therefore deny the same.

215.    Fowler emailed Doss asking for an operable number to contact him on.

**ANSWER**:    Defendant Fowler admits the allegations contained in Paragraph No. 215. The remaining Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 215 and therefore deny the same.

216.    Doss' pertinent and relevant information had not changed since his employment at the Mars Manteno facility in 2012.

**ANSWER**:    Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 216 and therefore deny the same.

217.    Fowler contacted Doss on or about August 14, 2014 and allegedly interviewed him about the allege insubordination incident on or about August 5, 2014.

**ANSWER**:    Defendant Fowler admits that Tammi Fowler contacted Doss to interview him about the insubordination incident which had occurred on or about August 5, 2014. Defendant Fowler lacks sufficient knowledge and information to form a belief regarding the truth of the remaining allegations contained in Paragraph No. 217 and therefore denies the same. The remaining Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 217 and therefore deny the same.

218.    Pointedly, company policy requires that all investigations be contacted as soon as possible or within a 24 hour window of the incident.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 218.

219.    Defendant again breached its fiduciary obligation to Doss by intentionally and willfully failing to unbiasedly investigate the matter.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 219.

220.    Again another intentional and willful interference in the employment relationship between Doss and the Mars Manteno facility.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 220.

221.    Doss continued to follow up by email with Fowler and others regarding the disposition of his suspension and work status.

**ANSWER**:    Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 221 and therefore deny the same.

222.    Defendant continued to subjugate Doss to wanton, intentional and willful interference, as well as, wanton intentional infliction of emotional stress and duress, as well as, once again breaching its fiduciary obligation to Doss:

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 222.

223.    When Defendant suspended Doss's employment on or about August 8, 2014 for ten (10) days.

**ANSWER**:    Defendant Jabaley admits that Kenco suspended Doss' employment in August 2014.    Defendant Jabaley denies that in suspending Doss' employment, it subjugated Doss to wanton, intentional and willful interference, wanton intentional infliction of emotional stress and duress, or that it breached any fiduciary obligation to Doss and further denies the remaining allegations contained in Paragraph No. 223. The remaining Defendants lack sufficient knowledge and information to form

a belief regarding the truth of the allegations contained in Paragraph No. 223 and therefore deny the same.

224.    As a direct and proximate result of defendants' action, plaintiff suffered serious injury, including but not limited to extreme embarrassment, humiliation, anxiety, fear, ridicule, physical upset and emotional distress, as well as, economic deprivation.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 224.

225.    Plaintiff is informed and believes and thereon alleges that Defendants' conduct was intentional and malicious and done for the purpose of causing Plaintiff to suffer humiliation, mental anguish, and emotional distress, as well as, to avoid culpability and offer a legitimate non-discriminatory reason for termination.

**ANSWER**:    Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations regarding what Plaintiff was informed or believed. Defendants deny the remaining allegations contained in Paragraph No. 225.

226.    Defendants' conduct in confirming and ratifying that conduct was done with knowledge that Plaintiff's emotional distress would thereby increase, and was done with a wanton and reckless disregard of the consequences to Plaintiff.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 226.

227.    Defendants, in breach of the duty described above, negligently and carelessly handled Plaintiff's employment status, causing Plaintiff to incur unnecessary costs and expenses, otherwise burdening Plaintiff with unnecessary and excessive debts, as well as, defaming and diminishing Doss's professional standing by purporting a contrived scheme riddled with flaws that Doss was insubordinate.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 227.

228.    Doss was eventually returned to work on or about August 19, 2014.

**ANSWER**:    Defendants admit that Doss was returned to work in August 2014 following his suspension.  Defendants lack sufficient knowledge and information to form a belief regarding the truth of the remaining allegations contained in Paragraph No. 228 and therefore deny the same.

229.    Upon Doss' return to work, Doss immediately began to be wantonly, willfully and intentionally harassed, retaliated and subjugated to unequal terms and conditions of employment when Valerie Lillie ran up and took Doss' picture while in the camera room and ran off.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 229.

230.    Doss was in the camera room with Edith McCurry, HR Administrator for the Mars Manteno facility reactivating his badge.

**ANSWER**:    Defendants admit that Doss was in the camera room with Edith McCurry. Defendant deny that Edith McCurry was the HR Administrator for the Mars Manteno facility.  Defendants lack sufficient knowledge and information to form a belief regarding the truth of the remaining allegations contained in Paragraph No. 230 and therefore deny the same.

231.    Doss was not on the clock.

**ANSWER**:    Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 231 and therefore deny the same.

232.    Doss was not in the warehouse proper.

**ANSWER**:    Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 232 and therefore deny the same.

233.    Doss was not operating any equipment.

**ANSWER**:    Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 233 and therefore deny the same.

234.    McCurry questioned Lillie about her taking Doss' picture.

**ANSWER**:    Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 234 and therefore deny the same.

235.    Lillie indicated that Jabaley had instructed her to do so because someone had called

Jabaley, who was out of town, that Doss was wearing flip flops.

**ANSWER**:    Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 235 and therefore deny the same.

236.    Lillie indicated that Jabaley instructed her and Mike Manzello to document this.

**ANSWER**:    Defendant Lilley admits, upon information and belief, that Valerie Lilley was instructed to document that Doss was wearing flip flops.  Defendant Lilley lacks sufficient knowledge and information to form a belief regarding the truth of the remaining allegations contained in Paragraph No. 236 and therefore denies the same.  The remaining Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 236 and therefore deny the same.

237.    Pointedly, the Personal Protective Equipment policy does not suggest or mandate

documenting an infraction in this manner.

**ANSWER**:    The allegations contained in Paragraph No. 237 are vague and ambiguous as to the phrase "documenting an infraction."   Subject to and without waiving said objections, Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 237 and therefore deny the same.

238.    Furthermore, upon information and belief no other employee had been subjugated

to this invasive, exploitative and harassive tactic.

**ANSWER**:    Defendants deny that Doss was subjugated to any "invasive, exploitative, and harassing tactic" and deny the allegations contained in Paragraph No. 238.


239.    Defendant maintained that Doss had violated the Personal Protective Equipment policy.

**ANSWER**:    Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 239 and therefore deny the same.


240.    Doss emailed Mike Manzello on or about August 25, 2014 regarding the incident-"Picture Day".

**ANSWER**:    Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 240 and therefore deny the same.


241.    Doss questioned them about the relevant SOP that was used to justify the encounter.

**ANSWER**:    Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 241 and therefore deny the same.


242.    Doss asked to see the relevant SOP that was used to justify the encounter.

**ANSWER**:    Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 242 and therefore deny the same.


243.    Defendant refused to provide relevant SOP that was used to justify the encounter.

**ANSWER**:    Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 243 and therefore deny the same.


244.    Again another breach in Defendant's fiduciary obligation to Doss.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 244.

245.     Simultaneously, to the "Picture Day" incident Defendant presented Doss with an Opportunity For Improvement Form regarding the allege *[sic]* insubordination of August 5, 2014 on or about August 21, 2014.

**ANSWER**:     Defendants lack sufficient knowledge and information to form a belief regarding the truth of the remaining allegations contained in Paragraph No. 245 and therefore deny the same.

246.     The disposition of The Opportunity For Improvement Form relegated Doss to a three (3) day suspension without pay.

**ANSWER**:     Defendants lack sufficient knowledge and information to form a belief regarding the truth of the remaining allegations contained in Paragraph No. 246 and therefore deny the same.

247.     The Opportunity For Improvement Form also referenced Scott Marksteiner as Doss's Manager/Supervisor.

**ANSWER**:     Defendants lack sufficient knowledge and information to form a belief regarding the truth of the remaining allegations contained in Paragraph No. 247 and therefore deny the same.

248.     Defendant alleges that the incident occurred between Doss and a third (3rd) shift supervisor.

**ANSWER**:     Defendants lack sufficient knowledge and information to form a belief regarding the truth of the remaining allegations contained in Paragraph No. 248 and therefore deny the same.

249.     The conversation ensued during the third (3rd) shift.

**ANSWER**:     Defendants lack sufficient knowledge and information to form a belief regarding the truth of the remaining allegations contained in Paragraph No. 249 and therefore deny the same.

250.    Third (3rd) shift begins at 11:00 pm.

**ANSWER**:    Defendants lack sufficient knowledge and information to form a belief regarding the truth of the remaining allegations contained in Paragraph No. 250 and therefore deny the same.

251.    Doss's shift had ended when this conversation occurred.

**ANSWER**:    Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 251 and therefore deny the same.

252.    Defendant's disciplinary policy is progressive in nature.

**ANSWER**:    Defendants admit that Kenco has a progressive discipline policy.  Defendants deny the remaining allegations contained in Paragraph No. 252.

253.    Doss had never been cited with or had an Opportunity For Improvement of any kind prior to this.

**ANSWER**:    Defendants lack sufficient knowledge and information to form a belief regarding the truth of the remaining allegations contained in Paragraph No. 253 and therefore deny the same.

254.    Defendant did not follow its own disciplinary policy.

**ANSWER:**    Defendants deny the allegations contained in Paragraph No. 254.

255.    Doss opposed the disparate and disparaging treatment and impact in writing on or about August 21, 2014.

- Doss informed defendant on The Opportunity For Improvement Form dated October 18, 2014 that:

  I.     Defendant did not follow its own policies and procedures
  II.    Defendant never debriefed or made available to Doss the disposition and findings of the investigation.
  III.   Defendant refused to disclose any specifics of the investigation, disposition or findings to Doss

IV.    Defendant had been supplied with witness statements
V.    Defendant failed to acknowledge Doss' statement and his witnesses statements
VI.    Doss had been subjugated to harsher scrutiny and discipline than other non-blacks or those who had not opposed such treatment
VII.    Doss had been subjugated to disparate and disparaging treatment and impact than other non-blacks or those who had not opposed such treatment
VIII.    Doss had been continually retaliated against
IX.    Doss's civil rights had continually been conspired against
X.    Doss disagreed with the suspension
XI.    Doss believed that this was being used a pretext to a legitimate non-discriminatory reason for termination
XII.    Doss had not been insubordinate

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 255.


256.    Plaintiff is informed and believes; and on that basis alleges that, at all times relevant to this action, Plaintiff and Defendants had a fiduciary relationship upon which Plaintiff justifiably relied to his detriment.

**ANSWER**:    Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations regarding what Plaintiff was informed and believes. Defendants deny the remaining allegations contained in Paragraph No. 256, including the allegation that Plaintiff and Defendants had a fiduciary relationship.


257.    By virtue of the relationship between Plaintiff and Defendants, a fiduciary duty existed.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 257.


258.    Plaintiff believes that Defendant breached its fiduciary obligation to Doss.

**ANSWER**:    Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations regarding what Plaintiff believes. Defendants deny the remaining allegations contained in Paragraph No. 258, including the allegation that Defendant had a fiduciary obligation to Doss.

259.    Pursuant to said duty, Defendants owed the utmost good faith and fairness to Plaintiff in all matters pertaining to Defendant's conduct with respect to Plaintiff's' employment and all the terms and conditions imposed upon Plaintiff . Including, but not limited to: equal terms and conditions of employment, as it related to progressive disciplinary actions, investigations and the like, as well as, the compliance to public policies.

**ANSWER**:    Defendants deny that Defendant owed a fiduciary duty to Doss and therefore deny the allegations contained in Paragraph No. 259.

260.    Plaintiff believes that Defendant breached its own policies and procedures when it failed to afford Doss an unbiased investigation, acceptance of witness statements to refute the allegations or protest the proposed actions. Furthermore, Defendant's disciplinary action policy is progressive in nature and relegated to related areas of concentration. For example, attendance and behavioral issues are individual disciplinary actions and are not constituted the same; therefore, in tandem they would not be progressive in nature each infraction would be unto itself.

**ANSWER**:    Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations regarding what Plaintiff believes.  Defendants admit that Kenco maintains a progressive discipline policy, but denies that Doss has accurately described the progressive discipline policy in Paragraph No. 260. Defendants deny the remaining allegations contained in Paragraph No. 260.

261.    Plaintiff believes that Defendant breached and violated public policy, as it relates to being free from a hostile and racially animus work environment, being subjugated to unequal terms and conditions of employment, as well as, disparate and disparaging treatment and impact.

**ANSWER**:    Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations regarding what Plaintiff believes.  Defendants deny that Defendant breached or violated public policy, deny that Doss was subjected to a hostile work environment, deny that Doss was subjugated to unequal terms and conditions of employment or disparate and disparaging treatment, and deny the remaining allegations contained in Paragraph No. 261.

262.    In addition, Plaintiff believes that Defendant knew that their actions would cause irreparable harm to Doss and others.

**ANSWER**:    Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations regarding what Plaintiff believes.  Defendants deny that Kenco knew that its actions would cause irreparable harm to Doss and others, and further deny that its actions caused irreparable harm to Doss and others.

263.    Defendant continued to subjugate Doss to intentional and willful interference, as well as, intentional infliction of emotional stress and duress, as well as, once again breaching its fiduciary obligation to Doss:

- When Defendant suspended Doss's employment on or about August 8, 2014 for ten (10) days.

- When Defendant vexatiously delayed Doss' investigation

- When Defendant refused to keep Doss apprised of the investigation

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 263.

264.    As a direct and proximate result of defendants' action, plaintiff suffered serious injury, including but not limited to extreme embarrassment, humiliation, anxiety, fear, ridicule, physical upset and emotional distress, as well as, economic deprivation.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 264.

265.    Plaintiff is informed and believes and thereon alleges that Defendants' conduct was intentional and malicious and done for the purpose of causing Plaintiff to suffer humiliation, mental anguish, and emotional distress, as well as, to avoid culpability and offer a legitimate non-discriminatory reason for termination.

**ANSWER**:    Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations regarding what Plaintiff believes.  Defendants deny the remaining allegations contained in Paragraph No. 265.

63

266.    Defendants' conduct in confirming and ratifying that conduct was done with knowledge that Plaintiff's emotional distress would thereby increase, and was done with a wanton and reckless disregard of the consequences to Plaintiff.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 266.

267.    Defendants, in breach of the duty described above, negligently and carelessly handled Plaintiff's employment status, causing Plaintiff to incur unnecessary costs and expenses, otherwise burdening Plaintiff with unnecessary and excessive debts, as well as, defaming and diminishing Doss's professional standing by purporting a contrived scheme riddled with flaws that Doss had been insubordinate despite several other recantations that state otherwise, including one from Doss' supervisor Marksteiner.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 267.

268.    Defendant continued to subjugate Doss to intentional, wanton, willful and contrived interference, emotional distress, harassment, retaliation, economic sanctions and the like when Stacey Bushey, who was a Lead Associate that got promoted to Supervisor, during the relevant times from September 2014 until November 2014 routinely, regimentally, and regularly harassed Doss on behalf of Defendant.

Bushey would:

- o   Questioning Doss about his whereabouts

- o   Questioning Doss about what he was doing

- o   Ignoring Doss' work related calls

- o   Following Doss to the time clock

- o   Watching Doss punch out

o Giving Doss' name to employees that Doss had cited and reported as breaking the company rules

o Purposefully seek out Doss to engage or complete tasks when other non-black similarly situated persons were available to engage or complete tasks

**ANSWER**:    Defendants admit that Stacey Bushey was a supervisor.  Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegation that Stacey Bushey was a Lead Associate who was promoted to supervisor and therefore deny the same.  Defendants deny the remaining allegations contained in Paragraph No. 268.

269.    Stacey Bushey upon information and belief has been the catalyst of a number of

African American males who had either been suspended or harassed,

a.    Upon information and belief, Keith Ellis was suspended by Stacey Bushey for using profanity in general; the language was not directed towards any one in particular

a.    Defendant took a position in Brown vs. Kenco, when it applied to a non-black; although profane language was distasteful it was a part of the warehouse culture.

i.    There was no relevant company policy that was inforce as it relates to the use of profanity at the workplace.

b.    Upon information and belief, Dana Woods was suspended for six (6) days pending an investigation because he was commenting on a situation that was on the national news about workplace incidents.

a.    Bushey felt threatened because of a comment that she overheard Woods speaking about with other co-workers.

i.    What relevant company policy addresses current events and freedom of one's speech.

c.    Upon information and belief, Stacey Bushey was responsible for the termination of Jacque Morrison an African American who had complained about an on the job injury, being made to move and load tons of candy manually, being forced to unsafe jobs, and forced to sign a paper stating that he did not have an on the job injury amongst other things. Morrison was also terminated for an alleged cell phone violation; despite the fact that there were other non-blacks who had cell phone/electronic device infractions and were not terminated, such as, but not limited to: Karl Meyer.

    d.      Upon information and belief, Stacey Bushey was hollering and berating Terrance Lindsey.

        a.      Terrance Lindsey called and reported Bushey to employee hotline; the representative could hear Bushey hollering in the background.

    e.      Upon information and belief, Stacey Bushey was reported to onsite Human Resource personnel on numerous occasions because of her attitude and treatment of employees.

**ANSWER**:    Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 269 and therefore deny the same.

270.    In continuum of Defendants' willful, wanton, and intentional subjugation of contrived interference, emotional distress, harassment, retaliation, economic sanctions in October of 2014 Doss's overtime started being denied.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 270.

271.    Defendant's Senior Manager of Employee Relations in Chattanooga, TN, Tammi Fowler, had Stacey Bushey inform Doss that he had to go home.

**ANSWER**:    Defendants admit that Tammi Fowler was Kenco's Senior Manager of Employee Relations in Chattanooga, TN. Defendant Fowler admits the remaining allegations contained in Paragraph No. 271. The remaining Defendants lack sufficient knowledge and information to form a belief regarding the truth of the remaining allegations contained in Paragraph No. 271 and therefore deny the same.

272.    Doss protested and stated that no other persons were being sent home on overtime.

**ANSWER**:    Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 272 and therefore deny the same.

273.     Overtime was a business necessity and most of the year it was mandated to meet the business need.

**ANSWER**:     Defendants admit that Kenco periodically mandated overtime as needed based upon business necessity.  Defendants deny the remaining allegations contained in Paragraph No. 273.

274.     Defendant stated that he was not approved for overtime.

**ANSWER**:     Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 274 and therefore deny the same.

275.     Pointedly, defendant had just previously sent out a communication that Lead Associates were the only persons who did not need to sign up for overtime or approval for overtime.

**ANSWER**:     Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 275 and therefore deny the same.

276.     Pointedly, it was out of protocol for Tammi Fowler to deny an employee overtime.

**ANSWER**:     Defendants deny the allegations contained in Paragraph No. 276.

277.     Pointedly, the operations of the Mars Manteno facility was governed by the Operations Manager.

**ANSWER**:     Defendants deny the allegations contained in Paragraph No. 277.

278.     Pointedly, the Operations Manager coordinated the work flow and scheduling of the Mars Manteno warehouse along with the General Manager, the onsite Regional Distribution Manager and Edith McCurry who managed time and attendance.

**ANSWER**:    Defendants admit that the Operations Manager and the General Manager coordinated the scheduling of the Mars, Manteno warehouse.  Defendants deny that Edith McCurry managed time and attendance and deny the remaining allegations contained in Paragraph No. 278.

279.    Defendant admits in its January 23, 2015 position statement referencing charge 2015CF1145 and 21BA50239 that "Mrs. Fowler denied him overtime."

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 279.

280.    Pointedly, at the Mars Manteno facility there was on site Human Resource Personnel Edith McCurry and Len Szplett.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 280.

281.    Len Szplett reported to Tammi Fowler with a dotted line to the General Manager.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 281.

282.    Len Szplett and Edith McCurry performed HR functions and duties years prior to Kenco's management of the Mars Manteno facility.

**ANSWER**:    Defendants admit that Edith McCurry performed payroll, which is often considered an HR function.  Defendants lack sufficient knowledge and information to form a belief regarding the truth of the remaining allegations contained in Paragraph No. 282 and therefore deny the same.

283.    Pointedly, Fowler should not have been involved in the day to day operations of parsing out overtime.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 283.

284.    Pointedly, Fowler had not denied any other employee overtime.

**ANSWER**:    Defendants lacks sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 284 and therefore deny the same.

285.    Pointedly, Tammi Fowler intentionally, willfully, and maliciously retaliated against Doss by denying him overtime.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 285.

286.    Pointedly, Tammi Fowler intentionally, willfully, and maliciously retaliated against Doss by conspiring with Stacey Bushey to harass, intimidate, scrutinize and discipline Doss.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 286.

287.    Upon information and belief Defendant contrived this scheme to inflict intentional and willful emotional distress and interference with Doss' employment relationship with the Mars Manteno facility.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 287.

288.    Upon information and belief, Defendant intentionally, willfully, and maliciously ostracized, minimalized and undermined the onsite Human Resource Personnel to avoid culpability, further advance its contrived schemes to create legitimate lawful non-discriminate reasons for termination, and to continue to foster a racially charged, animus, and hostile work environment.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 288.

289.    Upon information and belief, Defendant intentionally, willfully, and maliciously failed to reasonably correct the racially charged, animus, and hostile work environment, but made

every effort to continue to foster it along with its twisted tolerances of racism, sexism, discrimination of various kinds, as well as, other unlawful idioms.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 289.

290.    Doss was again subjugated to unlawful harassment, retaliation, and a hostile and animus work environment when Doss was given an Opportunity For Improvement form for performing work under the current standard operating procedures.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 290.

291.    Defendant accused Doss of incompetency and ineffectiveness in performing his job on or about November 16, 2014.

**ANSWER**:    The allegations contained in Paragraph No. 291 are vague and ambiguous, as Plaintiff does not specify the "Defendant" to whom he refers in this paragraph. As such, Defendants lacks sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 291 and therefore deny the same.

292.    Doss was following what he believed was the effectuated standard operating procedure.

**ANSWER**:    Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations regarding what Doss believed and therefore deny the allegations contained in Paragraph No. 292.

293.    Unbeknownst to Doss a meeting had occurred that Doss was excluded from indicating that a deviation in standard operating procedures would be occurring.

**ANSWER**:    Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 293 and therefore deny the same.

294.    Doss was not informed or trained on the upcoming deviation in standard operating procedures.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 294.

295.    Pointedly according to company policy all training is to be documented.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 295.

296.    Doss was presented with The Opportunity For Improvement form, on or about November 16, 2014, by Russel Schippets in an open forum, the cafeteria.

**ANSWER**:    Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 296 and therefore deny the same.

297.    Other employees were present during this time.

**ANSWER**:    Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 297 and therefore deny the same.

298.    Once again, Doss was publicly humiliated, berated and reprimanded.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 298.

299.    Doss explained that he was not aware of any procedure change and defended his actions.

**ANSWER**:    Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 299 and therefore deny the same.

300.    Schippets became angry, physically aggressive, and threatening towards Doss, as he was hollering at Doss and telling him that he had to sign The Opportunity For Improvement form.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 300.

301.    Doss eventually conceded to signing The Opportunity For Improvement form.

**ANSWER**:    Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 201 and therefore deny the same.

302.    Doss made an internal complaint to Edith McCurry site HR Administrator.

**ANSWER**:    Defendants deny that Edith McCurry was the site human resources administrator. Defendants lack sufficient knowledge and information to form a belief regarding the truth of the remaining allegations contained in Paragraph No. 302 and therefore deny the same.

303.    Doss made an external complaint to the IDHR and EEOC.

**ANSWER**:    Defendants admit that Doss filed charges of discrimination with the IDHR and EEOC.

304.    Pointedly, The Opportunity For Improvement form given to Doss in November of 2014 was not executed according to company policy.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 304.

305.    Defendant voided The Opportunity For Improvement form given to Doss in November of 2014 was not executed according to company policy.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 305.

306.    Defendant represented that it had voided The Opportunity For Improvement form given to Doss in November of 2014 was not executed according to company policy to the Illinois Department of human Rights and EEOC.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 306.

307.    Defendant never apprised Doss that it had voided The Opportunity For Improvement form issued by Schippets because it was not approved by management.

**ANSWER**:    Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 307 and therefore deny the same.

308.    Defendant's twisted tolerances of injustice, hate, and pervasive racism, as well as, inverted prioritization allowed Doss to be again harassed, publicly humiliated, berated and reprimanded for a failure to inform either by an error or an intentional omission.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 308.

309.    DOSS was paid an hourly rate and at times eligible bonuses. As part of his employment compensation package, he also received or was entitled to medical benefits, insurance, Paid Time Off and overtime as well as other benefits.

**ANSWER**:    Defendants admit the allegations that Doss was paid an hourly rate and was entitled to benefits. Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations contained in Paragraph No. 309 and therefore deny the same.

310.    DOSS was continually wantonly, intentionally and wilfully *[sic]* harassed and retaliated against throughout his tenure of employment with Defendant KENCO.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 310.

311.    While employed by Defendant KENCO, DOSS was the victim of race discrimination, harassment and retaliation. DOSS is an African American male. Due to his race he was treated differently from other similarly situated non-black, non-African American employees in the terms and conditions of his employment. Upon information and belief, DOSS alleges that he and other African American coworkers belonging to protected classes pursuant to the federal and the state of Illinois anti-Employment Discrimination laws were held to different standards than other employees of Defendant.

**ANSWER**:    Defendants admit that Doss is an African American male.  In further answering, Defendants admit that Doss has made allegations against it as set forth in Paragraph No. 311, but deny that such allegations are true and deny the remaining allegations contained in Paragraph No. 311.

312.    DOSS upon information and belief, alleges that African Americans and other employees that are members of the protected class have substantially lower employment and retention rates at KENCO, due to unfavorable terms, conditions and privileges of employment, such as: (1) lack of equal opportunity; (2) unfair and poor treatment; and (3) less tolerance and leniency when making adverse employment decisions, amongst other things. DOSS believes KENCO has a disproportionately lower number of African American employees in various management level positions.

DOSS, upon information and belief, alleges that there were substantially more non-African American employees, especially in management level positions, at the Manteno facility, as well as, other facilities. The non-African American employees at the Manteno facility were treated much more favorably than DOSS and other African American employees.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 312.

313.    From 2013-2015, DOSS was unfairly singled out and treated differently from his non-African American colleagues due to his race. DOSS's employment eventually ended on February 28, 2015. The reason given by Defendant KENCO for DOSS's discharge was the early termination of Defendant's contract with Mars, Inc. for breach of contract.

In fact, Defendant KENCO knew that it had no just cause to willfully, intentionally or wantonly harass, impose pay disparities; economic sanctions; retaliate against and deny DOSS of opportunities for employment when it: (1) falsely accused DOSS of smelling like "weed"; (2) falsely accused him of lying and manipulating drug and alcohol test results; (3) misrepresented his ability and skills in the performance of his job; and (4) misrepresented to him and misled him to believe that KENCO had conducted an unbiased investigations and adhered to company and public policy.

**ANSWER**:    Defendants admit that Doss' employment with Kenco ended on February 28, 2015, and that the reason given by Defendant for Doss' discharge was the early termination of Defendant Kenco's contract with Mars, Inc. Defendants deny the remaining allegations contained in Paragraph No. 313.

314.    Over the next several weeks, after the May 5, 2014 drug testing incident was reported to the Employment Assistance Program ("EAP") line. *[sic]* Defendant KENCO purported to conduct an unbiased, fair, objective, investigation of the matters at issue. On or about June 2014, Tammi Fowler and Dan Dey, a Director of corporate risk management, at Defendant conducted an interview with DOSS. DOSS also spoke with Paula Hise, VP of Operations on or about May 14, 2014. DOSS was never given a disposition of such investigation.

**ANSWER**:    Defendant Fowler admits that Kenco conducted an unbiased, fair, objective investigation regarding Doss's complaints. Defendant Fowler denies that Paul Hise spoke with Plaintiff on or about May 14, 2014. Defendant Fowler admits that Tammi Fowler and Dan Dey interviewed Plaintiff in or around June 2014. Defendant Fowler denies the remaining allegations contained in Paragraph No. 314. Defendants lack sufficient knowledge and information to form a belief regarding

the truth of the allegations contained in Paragraph No. 314 and therefore deny the same.

315.    On, or about June 3, 2014, Walsh, Defendant's then General Manager of the Manteno facility was terminated allegedly for a reason unrelated to the incidents concerning DOSS.

**ANSWER**:     Defendants admit that at the time, Walsh was the General Manager of the Manteno facility.  Defendants further admit that Walsh's employment ended for reasons which are unrelated to the incidents concerning Doss.  Defendants deny the remaining allegations contained in Paragraph No. 315.

316.    Defendant KENCO failed to completely and fairly investigate the drug testing incident in an unbiased manner, and instead, chose to completely ignore DOSS and failed to remediate and mitigate the situations at hand. Defendant KENCO maliciously and intentionally failed to follow up with any of DOSS's witnesses and follow company policy with respect to the incident while intentionally misrepresenting to DOSS that a fair and unbiased investigation had been conducted. This caused substantial damage to DOSS. DOSS, upon information and belief, alleges that his race; perceived sexual orientation and retaliation were substantial motivating factors in Defendant KENCO's:

**ANSWER**:     Defendants deny the allegations contained in Paragraph No. 316.

317.    (1) Refusal to pay DOSS his scale pay as a Shift Lead. (2) Refusal to properly investigate the facts and information provided by DOSS; (3) Failure to treat DOSS and other similarly situated non-white employees of Defendant KENCO fairly with respect to any adverse employment decisions; (4) Defendant's failure to follow its policies, custom and past practice, as it related to the investigation of alleged misconduct; (5) Defendant's failure to follow its policies,

custom and past practice as it related to promotions; and (6) its decision to continue to subject

DOSS to hostile and discriminatory treatment.

**ANSWER**:   Defendants deny the allegations contained in Paragraph No. 317, including the allegations contained in subparagraphs (1) through (6), inclusive.

318.    Upon information and belief, Defendant KENCO through its VP of Operations, Paula Hise, openly praised and lauded Walsh as a valued employee and friend, as well as, characterizing his separation from Defendant as a great loss. Hise made these statements about Walsh despite, Defendant being possessed of first-hand knowledge and evidence of Walsh's violation of company and public policy against discriminatory treatment in the workplace. This constituted another form of harassment, and racial animus by Defendant KENCO.

**ANSWER**:   Defendants deny the allegations contained in Paragraph No. 318.

319.    On or about July 14, 2014, Defendant KENCO willfully submitted false and inconsistent information to Regulatory and Public Policy agencies. Such as, but not limited to Illinois Department of Human Rights and EEOC.

**ANSWER**:   Defendants deny the allegations contained in Paragraph No. 319.

320.    Defendant KENCO's actions toward DOSS were unlawful, malicious, deceptive, defamatory, slanderous, fraudulent and contrary to principles of fairness and common decency. Defendant intentionally misrepresented to Plaintiff his job's compensation and that they had conducted a fair and impartial investigation. This was not the case. Moreover, DOSS, upon information and belief, alleges that other similarly situated, non-black, non-African American co-workers were not subjected to such treatment. Defendant has an admitted and documented pattern and practice of disparate treatment towards African Americans.

In continuum of Defendant's aggregate aforementioned behavior [sic], Defendant continued to subjugate Doss and others to other forms of unlawfulness.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 320.


321.    Plaintiff also believes that Defendant also intentionally and willfully interfered with his right to enjoy his protected rights of a fair due process of law.

**ANSWER**:    Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations regarding what Plaintiff believes. Defendants deny that Defendant intentionally and willfully interfered with Doss' right to enjoy his protected rights of a fair due process of law and deny the remaining allegations contained in Paragraph No. 321.


322.    Plaintiff also alleges and believes that Defendant committed obstruction by deception.

a.    Defendant knowingly and willingly engaged in misleading conduct by altering Plaintiff's personnel file, as well as, supplying misleading witnesses, information and documentation to hinder the administration of justice at the Illinois Department of Human Rights, Illinois Department of Labor, and EEOC, as well as, the pending judicial proceedings that would make Doss whole.

**ANSWER**:    Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations regarding what Plaintiff believes. Defendants deny the remaining allegations contained in Paragraph No. 322, including the allegations contained in subparagraph 322(a).


323.    Plaintiff also alleges and believes that Defendant committed obstruction by destruction of evidence.

a.    Defendant knowingly and willingly engaged in unlawful conduct by altering Plaintiffs personnel file to impede the administration of justice at the Illinois Department of Human Rights, Illinois Department of Labor and EEOC, as well as, the pending judicial proceedings that would make Doss whole.

**ANSWER**:    Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations regarding what Plaintiff believes.  Defendants deny the remaining allegations contained in Paragraph No. 323, including the allegations contained in subparagraph 323(a).

324.    Plaintiff also alleges and believes that Defendant committed obstruction of justice by destruction of evidence.

      a.    Defendant knowingly and willingly engaged in unlawful conduct by altering Plaintiff's personnel file, as well as, statements of account on Doss' behalf to obstruct the administration of justice at the Illinois Department of Human Rights, Illinois Department of Labor and EEOC, as well as, the pending judicial proceedings that would make Henry whole.

**ANSWER**:    Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations regarding what Plaintiff believes.  Defendants deny the remaining allegations contained in Paragraph No. 324, including the allegations contained in subparagraph 324(a).

325.    Plaintiff also alleges and believes that Defendant committed obstruction of investigations by destruction of evidence.

      a.    Defendant knowingly and willingly engaged in unlawful conduct by altering Plaintiff's personnel file, inclusive of the investigation file and other relevant parts of Doss' file commensurate to the company's to personnel file keeping policies and practices, to impede the administration of justice at the EEOC, as well as, the pending judicial proceedings that would make Doss whole.

**ANSWER**:    Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations regarding what Plaintiff believes.  Defendants deny the remaining allegations contained in Paragraph No. 325, including the allegations contained in subparagraph 325(a).

326.    Plaintiff also alleges and believes that Defendant committed obstruction of an administrative proceeding.

      a.    Defendant knowingly and willingly engaged in unlawful conduct by altering Plaintiff's personnel file, as well as, supplying misleading witnesses, information and documentation, including, but not limited: the

verified response and position statements, as well as, company policies, procedures and the like, to impede the administration of justice at the Illinois Department of Human Rights and EEOC, as well as, the pending judicial proceedings that would make Doss whole.

**ANSWER**:    Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations regarding what Plaintiff believes.  Defendants deny the remaining allegations contained in Paragraph No. 326, including the allegations contained in subparagraph 326(a).

327.    Plaintiff also alleges and believes that Defendant committed perjury.

a.    Defendant knowingly and willingly and contrary to oath engaged in unlawful conduct by deliberately supplying misleading witnesses, witnesses without firsthand information, false statements, verifications, position statements and documentation as material facts to impede the administration of justice at the Illinois Department of Human Rights and Employment Security and EEOC, as well as, the pending judicial proceedings under oath, as well as, verification, and certification that would make Doss whole.

For example:

a.    Defendant's verified response and position statements for:

a.    2015CF1145 and 21BA50239

b.    2015CF1160 and 21BA50571

c.    2015CF0822 and 21BA5009

d.    And other charges filed in connection with Doss' case and other disparate and disparagingly treated employees

**ANSWER**:    Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations regarding what Plaintiff believes.  Defendants deny the remaining allegations contained in Paragraph No. 327, including the allegations contained in subparagraph 327(a) and all other subparagraphs.

328.    Plaintiff also alleges and believes that Defendant committed a conspiracy to obstruct and commit fraud against the court.

    a.    Elliott stated to the Illinois Department of Human Rights and EEOC on or about January 7, 2015 that he was representing Defendant.

    b.    Defendant was informed with every filed charged that charges were cross filed with the IDHR and EEOC.

    c.    Defendant was informed of the EEEOC's recordkeeping and reporting requirements.

    d.    Defendant was also informed the participation requirements for participating in a Fact Finding Conference

Some examples are:

b.    Defendant knowingly and willingly postulated its Vice President of Legal as an individual who had firsthand knowledge of the material facts and/or matters relating to Henry and others by allowing him to be a participant in the Fact Finding Conferences for the Illinois Department of Human Rights and EEOC investigation, being a precursor to an obstruction of the Federal Court.

    a.    Defendant knew that it had an admitted history to the court of a pattern and practice of disparate and disparaging treatment and impact towards African Americans; specifically Jay Elliott informed the court of such in Brown vs. Kenco, {Case # 3:10-CV-668 in the Eastern Division of Virginia Richmond Division}

    b.    Defendant knew it had in excess of 30 discrimination charges filed against Defendant at the Mars Manteno Facility.

    c.    Defendant knew that these and other infractions, if found liable, would be a breach of contract with MARS, Inc.

    d.    Defendant knew it was truth to the charges filed.

    e.    Defendant knew it had violated a number or public policies.

    f.    Defendant crafted and contrived a plan to employ Jay Elliott as an employee of Defendant.

    g.    Defendant and Elliott discussed Defendant's employment expectations, goals and the like.

    h.    Defendant and Elliott agreed upon terms and conditions of Elliott's employment.

    i.    Defendant and Elliott knew that Elliott's employment would circumvent Illinois Department of Human Rights and EEOC guidelines.

j.      Defendant knew it would impede the exhaustive remedy process to the administration of justice.

k.      Defendant knew Elliott was a licensed and practicing attorney in the state of Tennessee.

1.      Defendant knew that it had retained Elliott as outside counsel in other employment related matters. {Case # 3:10-CV-668 in the Eastern Division of Virginia Richmond Division}

m.     Defendant had a well-established relationship with Elliott, Karen Smith and Miller & Martin PLLC. {Case # 3:10-CV-668 in the Eastern Division of Virginia Richmond Division}

n.      Defendant knew Elliott was not hired until after the incidents occurred relative to Henry.

o.      Defendant knew that Lori Varvel was not hired as the dedicated Human Resource Manager until after the incidents occurred relative to Henry in November of 2014. Exhibit CC.

p.      Defendant knew that Elliott was not physically situated at the Mars Manteno facility.

q.      Defendant knew that Jay Elliott and others such as Tarruni Fowler, Senior Manager of Employee Relations, were in Chattanooga, Tennessee and could not have been a party to the incidents in question.

r.      Defendant knew that it could conspire with its employees and not be subject to conspiracy.

s.      Defendant knew that as an attorney Elliott would not be allowed to be an active participant in the Illinois Department of Human Rights and EEOC investigations.

t.      Defendant knew that it had terminated some of the agitators and provocateurs of the allegations set forth by Doss and others.

u.      Defendant knew that it did not have supporting witnesses to incidents.

v.      Defendant reported to Illinois Department of Human Rights and EEOC that it no longer had its witnesses.

w.     Defendant knew that the incidents with Doss and others had been contrived and/or valuated differently than those committed by similarly situated non-blacks or

those who did not oppose such disparate and disparaging treatment and impact upon African-Americans.

x.     Defendant knew that it had ostracized its onsite Human Resource Personnel from formal investigations and the like.

y.     Defendant knew it had undermined its onsite Human Resource Personnel from performing their charged duties at the Mars Manteno facility.

z.     Defendant knew that the onsite Human Resource Personnel had reported the disparate and disparaging treatment and impact upon African-Americans and those who opposed such treatment to management and Kenco Corporate office.

aa.    Defendant knew that the onsite Human Resource Personnel had opposed the disparate and disparaging treatment and impact upon African-Americans and those who opposed such treatment.

ab.    Defendant knew that it had misrepresented the onsite Human Resource Personnel stance on the reporting of the disparate and disparaging treatment and impact upon African-Americans and those who opposed such treatment to the Illinois Department of Human Rights and EEOC.

ac.    Defendant knew that it deviated from its organizational structure at the Mars Manteno Facility.

ad.    Defendant knew that Elliott had no firsthand knowledge.

ae.    Defendant knew that they had not taken reasonable steps to correct the hostile and animus work environment for Doss and others.

af.     Defendant knew it did not follow its own policies and procedures.

ag.    Defendant knew that the Illinois Department of Human Rights and EEOC would assume that Elliott and others were legitimate employees of Defendant.

ah.    Defendant knew that employing Elliott would give him a legitimate reason to be a party to Defendant's administrative proceedings.

ai.    Defendant knew that the Illinois Department of Human Rights and EEOC would rely on the information provided by Elliott to make an administrative determination.

aj.    Defendant knew that Elliott would have an unfair advantage over Henry and others, as an Expert in Law and Subject Matter Expert in employment Law.

ak.    Defendant knew that Elliott would be able to mitigate any statements of fact made

by Plaintiff's because of his expertise and knowledge.

al. Defendant knew that Elliott would be able to use his expert knowledge to aid and abet Defendant in the violation of Henry and others protected rights by deception, conspiracy, manipulation of material facts to Defendant's advantage, presenting materially false and misleading documentation and statements to the Illinois Department of Human Rights and EEOC, impede and obstruct the administration of justice, commit fraud on the court, perjury and a number of unconscionable contrived schemes.

am. Defendant knew it was evading the law and circumventing justice.

an. Defendant knew that evading the law and circumventing justice at the IDHR and EEOC was a precursor to the obstruction of pending federal court proceedings.

ao. Defendant knew its beahviour's *[sic]* toward the employees of the Mars Manteno, as well as, the administration of justice were/are unlawful, disingenuous, and contrived.

ap. Defendant knew that assault was a criminal offense and punishable as such.

aq. Defendant knew that it aided and abetted the violators of company and public policy that included but was not limited to Mars Manteno employees and Kenco Corporate employees.

ar. Defendant knew that it had discriminated against Doss.

as. Defendant knew it minimalized its actions.

at. Defendant's hedged on prevailing at the IDHR and EEOC.

au. Defendant knew this would cause irreparable harm to Doss and others.

au. Defendant knew that providing misleading, deceptive, disingenuous statements and documents would make it more encumbering and difficult for Doss and others to prevail.

 i. Defendant knew it hired and promoted Stephanie Dumas against and in violation of its own policies.

 ii. Defendant knew that it intentionally created a racial, animus and hostile work environment for Doss and others.

 iii. Defendant knew it had retaliated against Doss by suspending him, denying him overtime and equal terms and conditions of employment and writing him up.

c.    Defendant also conspired with Mars Manteno employees, such as, but not limited to: Kelvin Walih *[sic]*, Mike Manzello, Mario Lopez and Stacey Bushey.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 328.

329.    Plaintiff also alleges and believes that Defendant committed obstruction by mail Defendant knowingly and willingly used the United States Mail to further its scheme of fraud by mailing Plaintiff's altered personnel file, as well as, supplying misleading witnesses, information and documentation to impede the administration of justice at the Illinois Department of Human Rights and EEOC, as well as, the pending judicial proceedings that would make Doss whole. For example:

    a.    Mailing to the IDHR and EEOC non-effectuated and irrelevant policies.

    b.    Mailing to the IDHR and EEOC verified responses and positions statements under oath and/or perjury that contained deceptive, fraudulent, misleading and disingenuous information that reference policies and procedures that were not relevant to Doss to commit fraud against the administration of justice and Doss.

**ANSWER**:    Defendants lack sufficient knowledge and information to form a belief regarding the truth of the allegations regarding what Plaintiff believes.  Defendants deny the remaining allegations contained in Paragraph No. 329, including the allegations contained in subparagraphs 329(a) and (b).

330.    As an officer of the court and subject matter experts Defendant and Defendants agents knew better.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 330.

331.    Upon information and belief racial slurs, epithets, degrading and demeaning remarks were made about Doss and others by Mars Manteno upper management and Kenco

Logistics Tammi Fowler, Dan Dey, David Jabaley and others. Stating that they should just pay those "niggers" off.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 331.

## FIRST CAUSE OF ACTION
### (Disparate Treatment Based on Race under TITLE VII)

332.    DOSS hereby incorporates by reference the allegations in paragraphs 1 through 331 of this Complaint as though fully set forth herein.

**ANSWER**:    Defendants restate their answers to Paragraph Nos. 1 through 331 of Plaintiff's Second Amended Complaint as though set forth fully herein.

333.    This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§20002 et seq., and 42 U.S.C. §1981A, for relief based upon the unlawful employment practices of the above-named Defendant . Specifically, DOSS complaints of Defendant KENCO's violation of Title VII's prohibition against discriminating against any employee on the basis of race, and prohibits discriminatory treatment with respect to the terms, conditions and privileges of employment.

**ANSWER**:    Defendants admits that Doss purports to bring claims against Defendants pursuant to 42 U.S.C. §1981A.  Defendants deny that they violated the aforementioned statute, deny that they discriminated against Doss or any other employee on the basis of race or for any other reason, and deny the remaining allegations contained in Paragraph No. 333.

334.    DOSS is an African American male, and thus falls within a protected class. As set forth fully hereinabove, DOSS was discriminated against on the basis of his race in the form of unfair terms, conditions and privileges of employment.

**ANSWER**:    Defendants admit that Doss is an African American male and thus falls within a protected class.  Defendants deny the remaining allegations contained in Paragraph No. 334.

335.    DOSS, upon information and belief alleges, that his race was a substantial factor contributing to the Defendant KENCO's discriminatory treatment of Plaintiff with respect to the terms, conditions and privileges of employment including, but not limited to, unfair, harassing and retaliatory treatment, as well as, the disparity in pay as set forth in paragraphs 1 through 77 herein. Defendant's stated reason for paying DOSS's less than his similarly-situated non-black, non-African American coworkers and subjecting him to drug testing were false and were made in bad faith and a mere pretext for discrimination. DOSS was subjected to invidious discrimination and harassment in his employment because of his race, up to, and including, Defendant KENCO's decision to unequally pay PLAINTIFF, deny of pertinent job training, subjecting him to a reasonable suspicion "drug test," as well as a myriad of other willful and intentional discriminatory acts.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 335.

336.    To the extent that DOSS's race was a substantial factor contributing to the conduct of Defendant KENCO's its agents, the above-described acts of the Defendant constitute unlawful employment practices in violation of TITLE VII.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 336.
.

337.    Defendant KENCO condoned the discriminatory acts and practices as alleged above and, as a direct and proximate result of the unlawful employment practices described herein, DOSS has sustained substantial economic losses, including wages and future earnings, loss of employment and benefits. As a direct and proximate result of the unlawful employment practices described herein, DOSS was, and continues to be caused great mental suffering, severe emotional distress, psychological trauma, and profound humiliation.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 337.

338.    Furthermore, Defendant KENCO' s intentionally and/or with reckless indifference, engaged in the above stated discriminatory practices against DOSS, contrary to his federally protected rights as guaranteed to him under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e et seq., as amended, and 42 U.S.C. §1981.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 338.

339.    The intentional and discriminatory conduct of the Defendant KENCO and its agents, as described in this Complaint, were willful, wanton, deliberate, malicious, egregious and outrageous warranting the imposition of punitive/exemplary damages which will serve as an example and deterrent to the Defendant and others who would commit such similar illegal acts.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 339.

340.    As Defendant KENCO engaged in discriminatory employment practices with malice or with reckless indifference to DOSS's federally protected rights, DOSS is entitled to punitive/exemplary damages in addition to compensatory damages and other remedies available under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e et seq., as amended, and pursuant to 42 U.S.C. § 1981A.

**ANSWER**:    Defendants deny the allegations contained in Paragraph No. 340.

341. Pursuant to TITLE VII DOSS requests an award of attorney's fees and costs against Defendant KENCO.

**ANSWER**:    Defendants admit that Doss has requested an award of attorneys' fees and costs against Kenco, but denies that Doss is entitled to the same.

## SECOND CAUSE OF ACTION
### (Intentional Infliction of Emotional Distress)

Count II has been stricken and dismissed against all Defendants. Therefore, no answer is required in response to Paragraph Nos. 342-352.

## THIRD CAUSE OF ACTION

### (Misrepresentation)

Count III has been stricken and dismissed against all Defendants. Therefore, no answer is required in response to Paragraph No. 353-62.

## FOURTH CAUSE OF ACTION
### (Retaliation in Violation of TITLE VII)

Count IV has been stricken and dismissed against the individual Defendants. Therefore, no answer is required in response to Paragraph Nos. 363-68.

### FIFTH CAUSE OF ACTION
### (Hostile Work Environment Based on Race)

Count V has been stricken and dismissed against the individual Defendants. Therefore, no answer is required in response to Paragraph Nos. 369-74.

## SIXTH CAUSE OF ACTION

### (Obstruction of Justice)

Count VI has been stricken and dismissed against Defendants. Therefore, no answer is required in response to Paragraph Nos. 375-383.

## **AFFIRMATIVE AND OTHER DEFENSES**

1.      To the extent Plaintiff purports to assert claims of discrimination or harassment that were not included in the Charges that he filed with the Illinois Department of Human Rights ("IDHR") (and cross-filed with the United States Equal Employment Opportunity Commission ("EEOC"), Plaintiff has failed to exhaust his administrative remedies and any claim associated with the alleged conduct is barred and should be dismissed.

2.      To the extent Plaintiff seeks to recover for alleged discrimination or harassment which occurred more than 180 days before he filed his relevant IDHR Charge, such claims are time-barred and should be dismissed.

3.      All actions affecting Plaintiff and/or the terms or conditions of his employment were taken for legitimate, non-discriminatory reasons and, as such, did not violate any legal rights possessed by Plaintiff.  In the alternative, assuming, *arguendo,* that Plaintiff is able to establish that his race played any part in any decisions of which he complains in his Second Amended Complaint, Defendants would have made the same decision(s) even in the absence of any unlawful consideration.

4.      Plaintiff's claim for any damages must be eliminated or reduced to the extent that he is, has been, or will be compensated from collateral sources.

5.      Any claims Plaintiff has for damages in the form of back pay, front pay, and benefits are barred to the extent he has failed to seek other employment diligently or otherwise to mitigate his damages.

6.      Defendants acted reasonably and in good faith, and not in willful violation of the civil rights statutes at issue in this action; accordingly, Plaintiff is barred from recovering punitive or liquidated damages.

7.     Defendants expressly reserves the right to assert additional affirmative defenses and revise the defenses asserted herein as Defendants learns additional relevant facts during the course of this litigation.

8.     Plaintiff's Second Amended Complaint should be dismissed, in whole or in part, because some or all of Plaintiff's allegations fail to state a claim upon which relief can be granted.

9.     Plaintiff's Complaint is barred, in whole or in part, to the extent Plaintiff failed to file his civil action within the applicable limitations period or applicable right to sue period.


WHEREFORE, Defendants respectfully request Plaintiff's Second Amended Complaint be dismissed with prejudice, and for any additional relief deemed just and appropriate.



Dated:   February 20, 2017                           Respectfully submitted,

                                                     **Defendants Kelvin Walsh, Tammi Fowler, Valarie Lilley, Mario Lopez, and David Jabaley**


                                                      By: /s/ Jody Wilner Moran
                                                         One of its Attorneys


Jody Wilner Moran (ARDC No. 6186236)
MoranJ@jacksonlewis.com
Jody Kahn Mason (ARDC No. 6289872)
Jody.Mason@jacksonlewis.com
Julia Pearce Argentieri (ARDC No. 6302727)
Julia.Argentieri@jacksonlewis.com
150 North Michigan Avenue
Suite 2500
Chicago, Illinois  60601

Telephone: (312) 787-4949

## <u>CERTIFICATE OF SERVICE</u>

I, Jody Wilner Moran, an attorney, hereby certify that on February 20, 2017, I electronically filed a copy of the foregoing **Defendants' Answer and Defenses to Plaintiff's Second Amended Complaint** with the Clerk of Court using the CM/ECF system. I further certify that a copy of the foregoing was served via U.S. Mail, to the following non-ECF participant:

> Nathan E. Doss (*pro se*)
> 1124 Abbot Lane
> University Park, IL 60484

and a filed copy of the foregoing will be served via CM/ECF system, which will send a notice of electronic filing to the following parties:

> Thomas R. Davies
> Harry Harmon
> Kimberly J. Overbaugh
> Harmon & Davies, P.C.
> 2306 Columbia Avenue
> Lancaster, PA 17603
> tdavies@h-dlaw.com
> rharmon@h-dlaw.com
> koverbaugh@h-dlaw.com

> By: /s/ Jody Wilner Moran _____